THE MAYOR, &c., OF NEW-YORK *against* MABIE and others.

A covenant for quiet enjoyment by the lessee is implied where, by an instrument under seal, the lessor demises and leases the right to collect wharfage for the term of one year.

Such an instrument is not a conveyance of real estate within the meaning of the statute (1 *R. S.*, 738, § 140,) forbidding the implication of covenants.[1]

The case of *Kinney* v. *Watts* (14 *Wend.*, 38), questioned by DENIO, J.

A mere trespass by the lessor upon the demised premises, is not a breach of his covenant for quiet enjoyment.

But a covenant for quiet enjoyment, whether expressed or implied, is broken by an unlawful interference by the lessor, under color of right, with the enjoyment by the lessee of the premises or incorporeal right demised.

In an action by the lessor for the rent reserved, the lessee may *recoup* damages sustained by a breach of an implied covenant for quiet enjoyment. [2]

Mayor, &c., of New York *v.* Mabie, 2 Duer 401, reversed.

APPEAL from a judgment of the superior court of the city of New York. The complaint alleged that the corporation

---

[1] *Mack* v. *Patchin*, 42 N. Y. 171; s. c. 1 Sheld. 67. *Lynch* v. *Onondaga Salt Co.*, 64 Barb. 558.

[2] *Rogers* v. *Ostrom*, 35 Barb. 523. *Morgan* v. *Smith*, 5 Hun 220.

3 KERN.—10

of the city was entitled to certain wharfage accruing at the wharves in a certain district of the city, and payable in respect to such vessels as should lie against or touch at those wharves and the slip and piers thereof; that in April, 1850, the corporation, by writing under the corporate seal and the seal of Mabie, one of the defendants, demised and leased to him the right to collect such wharfage u; on all vessels of over five tons burthen, for the district referred to, for his own use, for one year, from the first day of May ensuing, for the consideration of a rent of $5000, which Mabie covenanted to pay to the corporation in quarterly payments; that Mabie, to secure the payment of this sum, with the other defendants as his sureties, executed a joint and several bond to the corporation in the penalty of $11,000, conditioned for the payment of the rent above mentioned as it should fall due; that Mabie entered upon the premises and collected the wharfage to his own use, but had made default in the payment of the $5000,—$4425 thereof yet remaining in arrear and unpaid, for which, with the interest, the plaintiffs demanded judgment.

The answer admitted the grant and the execution of the bond and that Mabie entered upon the premises; but it set up that he was disturbed in the enjoyment of the right to wharfage by certain agents of the plaintiffs, who, by the plaintiffs' authority and direction, entered upon the premises and assumed the entire control of all vessels coming to the slip and piers embraced within the district as regarded their berths and locations, and granted to certain vessels and lines or classes of vessels particular berths and locations in the slip or at the piers, and prevented other vessels from using or occupying such berths or locations, whether they were occupied by the favored vessels or not; and that they let and gave to certain vessels the exclusive use of. berths and locations in the slip and at the piers aforesaid, for a compensation paid therefor to the corporation or its agents; by means of which Mabie sustained great losses of

wharfage. The plaintiffs replied, taking issue upon the allegations of the answer.

The action was brought to trial in April, 1853, before the chief justice of the superior court. The allegations in the complaint being admitted, the defendant offered to prove the facts set up in their answer. The court excluded the evidence, and directed a verdict to be rendered for the plaintiffs for the arrears of the $5000. Verdict and judgment accordingly. The judgment was affirmed at a general term, and the defendants appealed to this court.

*Abram Wakeman,* for the appellants.

*R. J. Dillon,* for the respondents.

DENIO, J. It is not denied but that the acts imputed to the plaintiffs in the answer would, if established, be an infringement of the rights of Mabie, under the grant from the corporation. But it is argued by the plaintiffs' counsel that the disturbance complained of was a mere wrong, unconnected with the contract upon which the action is brought; and that the only remedy which Mabie has, is to maintain a separate action for his damages. The case is the same, it is said, as though a stranger had interfered to the damage of Mabie. This would have entitled the latter to an action on the case; and it is insisted that the same mode of redress is the only one which he has against the plaintiffs. Before the doctrine of *recoupment* had been as firmly established as it now is, it was repeatedly decided that the lessee could not, in an action for rent, set up the breach by the plaintiff of a covenant in the same lease, though such covenant concerned the subject for which the rent was agreed to be paid. (*Tuttle* v. *Tompkins,* 2 *Wend.,* 407; *Etheridge* v. *Osborn,* 12 *id.,* 529; *Sickels* v. *Fort,* 15 *id.,* 559.) The principle of these cases was afterwards repeatedly disapproved of in the same court in which they were decided; and it cannot be denied consistently with the doctrine now well established, but that in an action for a breach of con-

tract, the defendant may show that the plaintiff has not performed the same contract on his part, and may *recover* his damages for such breach in the same action, whether they are liquidated or not; or may, at his election, bring a separate action. (*Ives* v. *Van Epps*, 22 W.end., 155; *Batterman* v. *Peirce*, 3 *Hill*, 171; *and see the authorities cited in these cases.*) The superior court, in the judgment we are reviewing, does not controvert the doctrine of *recoupment* to the extent just stated; but the judges of that court are of opinion that there is not in this case any covenant on the part of the corporation, guarantying to Mabie the quiet enjoyment of the rights which were granted to him, and therefore they hold that the doctrine of *recoupment* does not apply.

There is not found in the contract set out in the complaint any express undertaking, on the part of the corporation, that Mabie shall have and enjoy the interest conveyed; but the defendants insist that there is one implied in law. If the grant in question was a lease of corporeal property for a term, there is no doubt whatever but that, independently of the statute which we shall presently consider, there would be an implied covenant by the grantors for quiet enjoyment by the grantee. (*Noke's Case*, 4 *Coke*, 80 *b.*; *Barney* v. *Keith.*, 4 *Wend.*, 502; 8 *Paige*, 597; *Platt on Covenants*, 40.) But the right to wharfage which was the subject conveyed by the corporation to Mabie, was an incorporeal right; and it does not necessarily follow that all the legal incidents of a lease for years, of land, attach to the conveyance. On examination of the cases, however, I have come to the conclusion that the principle is not limited to demises of tangible property, but that it applies in its full force to conveyances of incorporeal rights. In *Seddon* v. *Senate* (13 *East*, 63), the plaintiff declared for a breach of covenant in an indenture, by which the defendant had conveyed to him all the defendant's " right, title, interest, claim and demand" to a certain medicine which he had invented: and authorized the plaintiff to prepare and sell the same, and receive the profits to his own use. The

breach assigned was, that the defendant had prepared and sold the medicine for his own profit, and authorized others to do so, contrary to the indenture, and to his covenant with the plaintiff. The defendant demurred, insisting that there was no such covenant in the indenture set out in the declaration, as the one referred to in the breach. The defendant's counsel argued that, conceding a good interest in the subject matter was conveyed to the plaintiff, and that he thereby acquired a property in it, the law would give him the ordinary remedies against such a wrong-doer without any covenant, and that the plaintiff was wrong in suing on a supposed covenant which did not exist. But the court held that the assignment of all the defendant's interest and property in the medicine raised an implied covenant that he would not prepare and sell it, or engage others in so doing for his own profit. Lord Ellenborough, C. J., said that the defendant "having sold and assigned the medicine, by words competent to convey the whole property in it, as he has done by this deed, when he is afterwards concerned with others in making and vending on his own account the same medicine, is not that a manifest breach of his covenant? How can he be said to have conveyed all his right, title and interest in the subject matter, if he retain the making and vending, and the profits arising from the sale of any part of it? It is a manifest contravention of this contract for the sale of the whole." Grose, J., remarked, "it amounts to a contract, that the whole thing bargained and sold should be the exclusive property of the vendee; the breach, therefore, of that covenant is well assigned." Le Blanc, J., said, the question was "whether, when it appears that the defendant had agreed to part with his whole interest in the medicines, and he does convey in terms large enough to cover his whole interest, the law will not imply a covenant that he shall not himself vend that for his own profit which he had agreed to sell, and had sold to another. And it appears to me that the breach assigned

The Mayor, &c., of New-York *against* Mabie.

against him in that respect is not like a mere tort committed by a stranger, but is a breach of that right which he had conveyed to another." Bayley, J., said, " a covenant is nothing more than an agreement, in construing which we have only to look at the fair meaning of the parties to it; and if the agreement was, in substance and effect, that the defendant would sell and assign to the plaintiff the sole right of making and vending the medicine for his profit, and that the defendant would not interfere with him in making and vending it, that raises an implied covenant on the part of the defendant that he would not make and vend it; and if he does afterwards make and vend it, it is a breach of that implied covenant." Finally, Lord Ellenborough stated, that "no argument could be drawn from the opinion delivered by the court to authorize the extension of the doctrine to the wrongful act of a stranger; but they considered the breach committed by the defendant as a retention and exercise of a right by him, the original proprietor, over the medicine which he had conveyed to the plaintiff." Other instances of covenants of quiet enjoyment, implied in conveyances of incorporeal hereditaments, will be found referred to in *Platt on Covenants*, 58.

The main object of a covenant for quiet enjoyment 'is to protect the lessee from the lawful claims of third persons having a title paramount to the lessor; but such a covenant, when fully written out, provides also for the protection of the lessee against the unlawful entry of the lessor himself. (*Platt on Covenants*, 312.) Consequently, where the law implies such a covenant from the character and terms of a conveyance not containing any express engagement, the scope of the implied guaranty should be equally extensive. The case of *Seddon* v. *Senate*, above mentioned, is a striking application of that principle; and other cases may be found in the section on implied covenants in Mr. Platt's treatise. (*p.* 40, *et seq.*) It is not, however, every mere trespass by the lessor upon the demised premises which will amount to a

breach of this covenant. Although the covenanter cannot avail himself of the subterfuge that his entry was unlawful, and be therefore a trespasser to avoid the consequences of his own wrong, still, to support the action of covenant, the entry must be made under an assumption of title. (*Platt on Covenants*, 319, 320.) It need not be averred in the pleading that the grantor acted under a claim of title; but if the character of the act be such as reasonably to show that the defendant acted upon such an assumption, the action will be sustained. Thus, where the defendant demised to the plaintiff with a full covenant for quiet enjoyment, certain premises, to which a pew in a church was appurtenant, and the lessee brought covenant against him, alleging that he had disturbed him in the use and enjoyment of the pew by sometimes sitting in it himself, and at other times putting other persons into it, and by locking it up on other occasions, the objection being taken that these acts were mere trespasses, the court said: "The act itself asserts a title; for the defendant locked up the pew, which is as strong an assertion of right as can well be imagined." (*Lloyd* v. *Tomkies*, 1 *T. R.*, 671.) The acts imputed to the plaintiffs in this case are equally unequivocal; and when we consider that they were a municipal corporation, acting by agents, and were moreover the general owners of the wharfage, and that they authorized and directed those agents to assume a control over the berths and locations which ships were accustomed to occupy, and granted such berths and locations to ship-masters for a compensation to be paid by them, we must infer that this was done under some claim of right.

These considerations have led me to the conclusion that there was in this case, upon the principles of the common law, an implied covenant by the plaintiffs to abstain from interfering with the right which they granted to Mabie, in the manner which the answer charges them with having done. It remains only to inquire whether the statute has

forbidden the implication of a covenant of quiet enjoyment in such a case as this.

The legislature has declared that " no covenant shall be implied in any conveyance of real estate, whether such conveyance contain special covenants or not." (1 *R. S.*, 738, § 140.) If this grant of wharfage for one year is *a conveyance of real estate*, no covenant can be implied in it, and there can be no *recoupment* for an alleged breach of covenant. I am of opinion that it is not a conveyance of real estate. Section 10 of title 5, of the same chapter of the Revised Statutes in which the foregoing provision is found, defines certain of the terms there used, thus : " The terms ' real estate' and ' lands,' as used in this chapter, shall be construed as coëxtensive in meaning with lands, tenements and hereditaments." (*Id.*, 750.) In a subsequent chapter of the Revised Statutes,—that which relates to the proof and recording of conveyances, there is another definition of one of these terms, as follows : " The term ' real estate,' as used in this chapter, shall be construed as coëxtensive in meaning with lands, tenements and hereditaments, and as embracing all chattels real, except leases for a term not exceeding three years." (2 *R. S.*, 762, § 36.) There is much significance in the language added to the first definition when the same terms came again to be defined for another purpose. It is a virtual declaration that the words employed to define real estate, in the first definition, would not embrace chattels real. We must intend that in those definitions, language was used with great care and discrimination. The object being to remedy, by precise definitions, the inconvenience arising from the use of words to which different meanings might otherwise be attached, we cannot suppose that any vagueness of expression would be indulged. In comparing these two definitions with each other, we arrive at a pretty satisfactory conclusion that the legislature understood the words, "lands, tenements and hereditaments," as excluding terms for years in

land. And in this I think they were clearly right. The legislature was dealing with terms of art and is presumed to have used them in their technical sense. We might lay out of view in this case the word "lands," for that word always refers to something corporeal; but the other two words may be correctly applied to an estate in incorporeal hereditaments. Now a term for years in lands (and *a fortiori* in incorporeal rights,) is not in law a tenement or a hereditament. Coke says that "*tenementum*, tenement, is a large word, to pass not only lands and other inheritances which are holden but also offices, rents, commons, profits *apprender* out of lands and the like, wherein a man hath any frank-tenement, and whereof he is seized *ut de libero tenemento*." (1 *Co. Litt. by Thomas*, 219.) "But hereditament," he says, "is the largest word of all that kind; for whatsoever may be inherited is a hereditament, be it corporeal or incorporeal, real, personal or mixed." (*Id.*) The first of these definitions requires that the estate, or interest to amount to a tenement, should be a freehold at least; and to be termed a hereditament, according to the second, it must be descendible by inheritance. Terms for years fall within the definition of things personal. They go to the executors like other chattels; and although they are denominated chattels real to distinguish them from mere movables, they are not, when speaking with legal accuracy, considered real estate. (2 *Bl. Com.*, 386). In *The People* v. *Westervelt* (17 *Wend.*, 674), the meaning of the terms "real estate" and "tenements," at common law, was shown to exclude terms for years and other chattel interests; and it was furthermore shown that these words were used in that sense in that part of the Revised Statutes which relates to the redemption of lands. The supreme court, it is true, in *Kinney* v. *Watts* (14 *Wend.*, 38), held that the provision in the Revised Statutes, forbidding the implication of covenants, embraced leases and other conveyances of terms for years where the term exceeded three years; but this con-

clusion was arrived at by inadvertently applying to the case the second definition of real estate, which is found in the chapter respecting the recording of conveyances. The learned judge who delivered the opinion does indeed say that the legal import of the terms would be the same which he gave them if there had been no legislative definition; but having found, as he supposed, a statutory definition which precisely suited the case, he examined less attentively than he otherwise would have done as to their meaning at common law. Chancellor Walworth had occasion to examine this question in *Tone* v. *Brace* (11 *Paige*, 566); and he held that the supreme court, in *Kinney* v. *Watts*, fell into an error, and that the statute referred to had no application to terms for years. (*See also* 8 *Paige*, 597, *and* 1 *Clarke's Ch. R.*, 507.) I am satisfied that the construction adopted by the chancellor is the true one, and that there is nothing in the provision of the Revised Statutes under examination which forbids us from finding, in the grant in question, an implied covenant against the acts of the grantors and against others claiming by lawful title. The result would be the same if the question had arisen upon a lease for years of land. The evidence offered by the defendants at the trial should have been received. If such evidence shall be produced on a future trial, it will still be competent for the plaintiffs to show, if they are able, that the acts complained of as a disturbance of the rights of the lessee, were done in the lawful exercise of a power to regulate the disposition of vessels in the public docks, under any ordinances or legal regulations which may exist upon that subject. We do not intend to express any opinion upon that question, the evidence not being before us. The judgment of the superior court must be reversed, and a new trial ordered in that court.

GARDINER, C. J., JOHNSON, HAND and DEAN, JJ., concurred in the foregoing opinion.

CRIPPEN, J., delivered an opinion in favor of affirming the judgment of the superior court, and MARVIN, J., concurred with him.

Judgment reversed.