By the Court,
Robertson, Ch. J.
It is claimed by the defendants that the plaintiffs have waived their appeal in this case by accepting from them the amount of the verdict in favor of the latter, with costs. Eumerous authorities have been cited to us on the argument to sustain that position but they will all be found to be cases where an appellant had attempted actively to enforce either the whole of a judgment order or decree in his favor, or else some part thereof, connected with and dependent upon'such other part thereof as he may have appealed from, or else where he had availed himself of some benefit or favor granted or offered to him by such judgment, order or decree, as an alternative to exercising the right of appeal. Thus, in one of the most recent of such cases (Bennett v. Van Syckel, 18 N. Y. Rep. 481,) a defendant had appealed from all parts of a judgment except such as ordered the plaintiff to execute a bond of indemnity to him against the covenants in a lease, which he was therein directed to assign to the plaintiff, and also to pay certain moneys into court, to have the right thereto contested; notwithstanding which, he sued upon such bond of indemnity when delivered to him, and proceeded to litigate his right to such moneys, and it was held, that the connection of all parts of such judg *179 ment with and mutual dependance upon each other, precluded the defendant from availing himself of such part of the judgment as was in his favor, and appealing from that which was prejudicial to him. In Vail v. Remsen, (7 Paige, 206,) the more general principle was sactioned, that proceeding upon an order appealed from by an appellant was a waiver of his appeal. In Radway v. Graham, 4 Abb. Pr. 468,) and Lewis v. Irving Fire Ins. Co., (15 id. 140, n.) acceptance of a benefit granted by an order in the shape of costs to an appellant, as a condition of a favor granted thereby to his adversary was held to be a waiver of an appeal from the part of the order granting such last favor. In Noble v. Prescott, (4 E. D. Smith, 139,) the mere renewal of a motion, according to a privilege to do so granted in an order denying such motion, was held to be a waiver of an appeal from the part of the order so denying it. The decisions in all these cases are traceable to the same principle as that laid down in Bennet v. Van Syckel, (ubi supra,) which is the injustice of enforcing or claiming that, the only right to which is derived from the adjudication of a court, and repudiating that which is made, the consideration therefor by the same adjudication, as an entirety.
The principle applied in those cases, therefore, does not conflict with that sustained in Higbie v. Westlake, (14 N Y. Rep. 281,) and Clowes v. Dickenson, (8 Cowen, 328,) which were decided in the court of last resort. That justified an appellant in receiving money voluntarily paid to him, although adjudged to be due to him by a judgment order or decree, from which he had appealed simply, to gain a decree for more. Whatever might be the result of the appeal, he could not be compelled to restore moneys so voluntarily paid. It was only available as an extinguishment of his claim, or part of it, in any subsequent litigation, and formed no basis for an order of restitution. A tender and payment of money into court admits the cause, "of action, and gives to the party to whom it is tendered an absolute right to such sum for the same reason. The payment of a sum of money on account of a claim, even after judgment, does the same thing. The existence of a *180 judgment is immaterial, and the pendency of the appeal only has the effect of rendering it contingent and precarious. The tender of the amount stops interest on the whole claim, if the appellant never recovers any more. A party refusing a tender loses both interest and costs, if he afterwards seeks to enforce his claim by action, simply because the law discourages unnecessary litigation. After an action is begun, an appeal to correct judicial errors is a right, only regulated, but neither favored or disfavored, by the law. A right of tender, there- ■ fore, intended merely to prevent interest and costs, should not be abused to compel the opposite party either to abandon an appeal or waive all claim to interest. Both parties deal together, subject to the result of the appeal, on which, besides the question of amount, the runnipg' of interest as well as future costs are to depend, whatever muy be such result.
The plaintiffs are obliged to enter up a judgment in order to bring an appeal. That judgment becomes a debt of record, having the like incidents as other debts, including its bearing interest. It does not merge the original claim, unless the litigation ceases there by the appeal being unsuccessful. A tender and refusal is as effectual as a payment and receipt of moneys to stop interest. There is no principle by which a party is to be absolutely barred from litigating his claim for a larger sum than that paid, merely because he accepts part in order to prevent a loss of interest, if he turns out to be wrong. A tender accompanied by a demand of the acceptance of the sum in full discharge of all claims or any other condition is bad, (Wood v. Hitchcock, 20 Wend. 47,) and therefore he cannot be compelled to accept it. The actual acceptance of the sum tendered therefore only extinguishes' a claim where it is all to which the claimant is entitled. What the plaintiffs are entitled to in this case depends on the result of their appeal. I do not know that if the tender had been refused the defendants would have been bound to make it good by forthwith bringing it into court, or if they did so I apprehend the court would not make a waiver of the appeal a condition of taking it out, whatever other conditions they might impose.
*181 The motion to dismiss the appeal should, for the reason before given, be denied with costs.
In order to determine the merits of the case before us, it will not be necessary to notice those covenants in the lease in question, for whose breach no damages were proved or claimed, or the parts of the pleadings which relate thereto, except so far as the admission of evidence, or any effect of such covenants, if any, or that for whose breach damages were recovered, or their influence on the question of those damages, may require. Such, lease contained no covenant for general repairs on the premises by either lessors or lessees. The defendants covenanted to do only such repairs as might be rendered necessary by their use and occupation of the premises, besides agreeing to surrender the premises- in a good state as reasonable use and wear would permit, damages by the elements excepted. Permission, however, was reserved therein to the plaintiffs, their servant or agent, at all times during the term, to enter into and inspect the demised premises, and “make such repairs therein as they shall deem proper.” The premises were described in such lease as a five story marble front store, and were thereby demised “ for the purpose of the dry goods business.” The defendant covenanted not to use or occupy them, or permit them to be occupied, or underlet them, for any other business, and not to assign such lease, or the term granted thereby, without the consent of the plaintiffs. The covenant for whose breach damages were deducted from the claim of the plaintiffs was not an undertaking by them to do, or forbear to do. any thing, but simply a guaranty against the occurrence of a particular event not under their control, to wit: the percolation of water through the walls or floor of the sub-cellar of such building.
What difference it might have made in the practical result of the action, or the admissibility of evidence or rule of damages, if the defendants had sought to recoup for injury sustained by them by ingress of water into the building in question, instead of setting off their damages, it is not necessary to discuss. Damages for breach of a continuing covenant of guar *182 anty against a particular occurrence affecting lands, (Mayor &c. of N. Y. v. Mabie, 13 N. Y. Rep. 151,) or even of a covenant to do a particular act, such as repairing, (Nicholas v. Dusenbury, 2 id. 283,) may he recouped, hut in the latter case the defendant is limited to the expense of doing such act, and cannot recover special damages, (Dorwin v. Potter, 5 Denio, 306,) which are not the subject of recoupment. (Allaire Works v. Guion, 10 Barb. 55.) How far injuries, arising from the ingress of water into a building, although continuing for more than three months, could be subdivided, so as to have the damages arising therefrom during each quarter deducted from the rent therefor by way of recoupment, is at least doubtful. Claims arising out of one contract cannot be applied in reduction of those growing out of another distinct one, although contained in the same instrument or forming part of one transaction. (Seymour v. Davis, 2 Sandf. 239. Deming v. Kemp, 4 id. 147.) Whether a covenant to pay rent in quarterly payments does not or does make the payment of each year’s or quarter’s rent a separate contract, so as to enable the lessee to deduct damages for injuries during each quarter or year arising from a breach of a continuing covenant, is perhaps immaterial in this case. The claim by the defendants for injuries arising from the entrance of water into the sub-cellar in question, is made in the answer by way of set off, and a prayer is also contained therein for judgment for the excess of their damages beyond rent claimed by the plaintiffs. The claim of the plaintiffs is substantially admitted, and the rights of the defendants to damages for breach of such covenant, as well as the pleadings and evidence in relation thereto, are to be governed by the same rules as if they were plaintiffs in an action on such covenant, and I shall proceed to consider their rights in the same manner as if they stood in that position.
The language of the covenant on which damages were recovered by the defendants is somewhat peculiar; it is not that water should not percolate through the walls and floor of the sub-cellar in such question, but that such sub-cellar should be “ free from (such) percolation of water.” It seems, *183 therefore, not to have intended that as many canses of action should arise as acts of percolation should occur, but rather one against the subjection of the premises to such ingress of water during the term. The answer also adopts this view by negating the freedom of such sub-cellar from such invasion, and averring that “ during all or the greater part ” of the time, water had percolated through its walls and floor, and rendered the same wet and damp, and unfit for use. It also alleges, as an injury arising from “ such wetness, dampness, and presence of water in such cellar,” deprivation of its use for the purposes for which it was let to the defendants, and also for the stowing of dry goods therein, and avers the difference in value of the premises as covenanted to be in such lease for the business for which they were let, and their value by the condition of such cellar, to be a certain sum per annum, which the defendants claim up to a certain date, and onward to the time of’ the trial, as damages. This, certainly, is not a claim for damages for each single act of percolation during each quarter, and its consequences, to be set off against the rent due at the end of that quarter ; but is a claim for general damages for injury to the defendants during all the time previous to the trial, caused by one continuous occurrence, consisting of successive acts violative of such covenant. (Shaffer v. Lee, 8 Barb. 412.)
No requests to charge were made, and no exceptions talien to the charge as made, except as to the effect of certain letters. How the jury arrived at the amount of damages allowed the defendants does not legally appear on the record. The amount would seem, by calculation, to correspond with the amount claimed in the answer, of annual damages, by reason of the occurrences complained of, if allowed during the time water came into the cellar, from June, 1861, as the date of its first appearance there, to its final exclusion by appliances introduced by the plaintiffs. But another claim for damages from a similar cause, during a prior period, was submitted to them by the learned judge before whom the cause was tried, to wit, from the time of the defendants entering into possession until *184 the November following, but without any evidence in the case, that I have been able to find, to sustain such a claim. There was evidence to prove that such sub-cellar had been damp during the period last mentioned, and that such dampness might have arisen from moisture in the materials of which it had been recently built: there was none to prove it arose from any percolation of water in the cellar. The learned judge properly instructed the jury that the defendants could not claim for “ any injury resulting from dampness not caused by percolation of water into the sub-cellar. Any necessary natural dampness incident to the location of the sub-cellar, or its construction, and not effected at all by. water getting through the walls or floor of the sub-cellar, is a consequence which the defendants themselves must bear.”
(After analysing the testimony of all the witnesses in reference to the. dampness in the building in question, the court proceeded.)
None of. the witnesses preserve the distinction very accurately between the dampness of the air of the basement and the cellar, and moisture of the floor, walls or other solid substances. Stoves and steam apparatus seem to. have been employed, from time to time, to correct the former, and perhaps the latter. The principal, if not only subject of complaint, from May to December, I860, was dampness of the atmosphere in the basement and cellar, without the slightest evidence showing that it originated in the oozing of water through the floor or walls, and I am not prepared to consider it as a matter of judicial cognizance that dampness in a room must arise from the percolation of water through its walls or floor, particularly as all the direct evidence in the case shows it was the inevitable attendant of-a newly built cellar.
The question of due proof of injury arising from .the evil covenanted against, during the period between May and December, 1860, of course is immaterial in reference to its having been submitted as a question of fact to the jury, because there are no exceptions to the charge ; but it is important in reference to questions which were excepted to, put to witnesses as *185 to their opinions in regard to deterioration in the value of the premises, arising from that cause, during all the time from May, 1860, to December, 1862. Thus one defendant (Babcock) was allowed to state the state of the sub-cellar, in respect to the storage of dry goods, during all that time. Another defendant (Milnor) was allowed to state what, in his judgment, the premises in question were worth less, per annum, during that time, “ in consequence of the state of that cellar ; ” such state being, as he observed it, merely “general dampness through the whole store sometimes, and great dampness in the basement.” This, certainly, was not necessarily injury arising from the entrance of water. Both those questions were clearly improper, until a proper foundation had been laid by showing that the covenant in question had been violated during all that time.
Another set of questions, of a similar character, was put to other witnesses in reference to their opinion of the effect upon the yearly value of such store of a certain degree of dampness in the sub-cellar and basement, producing mould upon books, papers and articles of furniture therein, as well as injury to dry goods-. As a necessary foundation for such questions, it should have been preliminarily shown, when such dampness existed, as well as that it was caused by the percolation of water through the floor or walls of the sub-cellar; because, even if such water entered first through the basement, that formed no cause of action under the covenant in question. Setting aside the evidence already alluded to, of dampness in the basement and cellar, prior to December, 1860, there was no evidence of any ingress of water through the floor of the sub-cellar until about the time of the notice thereof, given for the first time by the defendants to the plaintiffs, in June, 1861.
(After analysing the testimony of witnesses in reference to the existence of mould on and dampness of articles in the basement, the court proceeded.) Assuming that such mould and dampening of the covers of goods were seen by the witnesses after June, 1861, when the water percolated through the floor, there was no evidence offeréd to show that it must have origin *186 ated from moisture produced by the evaporation of such water, and not from that incident to a cellar damp from other causes. It was in evidence that other causes did produce such moisture, and that it produced the mould and dampened the goods, for even Mr. Franklin saw it in September, 1860, before any water entered, and it was left to conjecture to determine that it arose' afterwards from the water which had oozed in. It is true, the coincidence in time of the presence of the water, the damp air and the mould might possibly have been thereby established, but neither the court nor jury would have a right to conjecture therefrom that they were inevitably connected with each other. Several witnesses, however, were allowed to state their opinion of the effect upon the value of the store, basement and sub-cellar of such moisture in the latter, as to cause dampness in the basement, mould on cases of goods and on furniture, books and papers, and cartons of goods, without regard to, or proof of, the origin of such moisture. Such testimony being immaterial by itself could only have an effect to produce an undue bias on the minds of the jury. The exceptions thereto were, therefore, improperly overruled.
Still more objectionable questions were put to two other witnesses, who had only made a few visits to the premises, whose varying condition they observed and described, and were asked to state how much less, in their opinion, for the dry goods business such store, basement and sub-cellar were worth yearly in consequence of such condition. That assumed, without evidence, that such condition continued at least.for a year. Those questions should have been excluded when objected to.
Two witnesses were allowed'to testify as experts after objection, as to the effect of the state of the cellar upon the value of the premises in'question, when their only stock and extent of experience consisted of having hired stores ’and being acquainted with their value. They do not appear to have been acquainted with the effect on a yearly rent of dampness in a basement or water^ in a- sub-cellar. A mere knowledge of the value of stores which never had a damp basement would not assist anyone in determining the extent of its deteriorating
*187 effects on such value. A singular question was also allowed to be put to a medical practitioner, whether a certain state of dampness in a cellar, producing certain effects, would not be injurious to the health of an occupant of. the store to which such cellar belonged. There was no evidence in the case that the health of any of the defendants had been injured by the violation of the covenant complained of, or they had lost the services of any clerk thereby, or an opportunity of renting the store, or that the danger to an occupant’s health was one of the influences which would cause a depreciation in the value of a store in consequence of having a wet cellar. Possibly the court may have allowed the question first as a matter of discretion, on the supposition that such facts would be proved, and-their attention was not called to it so as to warn the jury against being influenced by it. Still it was a dangerous exercise of that discretion, as it had a natural tendency to influence, their minds, and, being matter of opinion only, should have had the facts which justified its admission first proved. It was at all events defective in assuming the dampness to have been proved to have originated, not in the sweating of a new cellar or other causes, but in the percolation of water.
Another objection, to which every question put to the witnesses on the trial in relation to the difference of yearly value of the premises by reason of the dampness, is, that they either assume, without proof, that such dampness affected such yearly value in the market or do not discriminate between such reduction and yearly damages, caused by the dampness, to be set off against the rent. In other words, they do not distinguish between such yearly diminution as an element or item of damage and as a standard of damages. The jury might have taken the amounts given as the sole measure of damages, throwing out of view all evidence of position, physical injury either to goods or otherwise, or have taken it as another element of damage to be added to that last referred to. No preparation was made for receiving it legally as a measure of damages, by ascertaining preliminarily whether dampness usually diminished the value of a store by fixed rates, and that the witnesses *188 knew it. It was clearly not a separate element of damage, if, besides the probable injury to goods and loss of business embraced in it, the. defendants were to be compensated for actual injury. The answers of the witnesses show how they understood such questions ; they evidently speculated on the probable amount of injury to the business and the goods and fastened the loss on the rent, without undertaking to say that such considerations would or did influence persons about to hire stores for the dry goods business. As a general rule, opinions of witnesses as to damages sustained by one person from the conduct of another, or occurrences for which he is responsible, are inadmissible, (Fish Dodge, 4 Denio, 311 ; Morehouse v. Mathews, 2 N. Y. Rep. 514; Duff v. Lyon, 1 E. D. Smith, 536; Dunham v. Simmons, 3 Hill, 609,) although stated with the facts on which they are founded, (Cook v. Brockway, 21 Barb. 331 ; Lincoln v. Saratoga and Schenectady R. R. Co., 23 Wend. 425 ; Harger v. Edmonds, 4 Barb. 256,) even when such facts are proved by other witnesses to have attended the occurrence complained of. (Paige v. Hazard, 5 Hill, 603.) Opinions of the value of articles may be given by those familiar with the identical article or similar ones. (Clark v. Baird, 9 N. Y. Rep. 183.) But whenever the value of the subject to be estimated is uncertain and varying, the witness can only give the elements of value as facts, and leave the jury to make their own estimates. (Dunlap v. Snyder, 17 Barb. 561. Maxwell v. Palmerton, 21 Wend. 407.) Probable damage to the business or merchandize of a merchant by the effects of vapor from a cellar, during, any fixed time, could not well be measured by any proportion of the rent. It is not probable that any one would hire a store at a rent, whose low amount would compensate him for damages to his goods or injury to his business. The only way in which such defect would, probably, operate on landlords and tenants, would be, by the store commanding such tenants as would not require the use of the parts affected by dampness—or whose business did not suffer from it and who could not afford to pay the higher rent of a sound store. At all events, no evidence in this case discloses *189 in what way such probable damage affects such yearly value. Ho question was put to a single witness as to whether the dampness of a cellar affected the yearly value of a store, measurably, to any extent capable of being stated in money value. Dampness clearly did not affect the rent directly, nor through the medium of actual injury to business or goods ; and if it did it in any other way, it must be shown to have done it in that way, and that the witnesses knew it, before they can be allowed to give their views of its extent. How the answers of the witnesses showed the consequences of putting the question in the mode adopted, of assuming that dampness did affect yearly value, and simply calling upon them to state the amount and the basis of an estimate may be seen in the testimony of one of the witnesses. He took as the basis of his estimate of the depreciation of rent, the loss of a place for samples, the annoyance of procuring another, and injury to goods, which presupposes the occupation of the store, and actual°injury irrespective of diminution in the market value. As those injuries would depend on fluctuating causes, the jury were the sole proper judges of their extent, when the facts were given.
There was also another serious objection to giving evidence of a deterioration in the market value of the stores by the dampness of the cellar, which was, that the deféndants could not- assign their interest in the premises without the consent of the plaintiffs, and it was not, therefore, a vendible commodity ; their sole value to the defendants, was their right of occupying them. The law might transfer them to another, but the parties could not.
The questions put to witnesses, therefore, as to deterioration in value of the premises, or some of them, were inadmissible on some one or more of the grounds already stated, to wit:
1, The evidence did not establish that the dampness referred to arose from the evil covenanted against.
2. The failure to establish that the witnesses whose opinion was sought, were experts in the effect of dampness in cellars upon the rents of-stores.
*190 3. If such questions were intended -to elicit the opinions of witnesses as to the value of the probable extent of injury to the goods and business of the defendants, it was substituting the witnesses in the place of the jurors, who alone are judges of the facts.
4. If such questions were intended to elicit the opinion of witnesses as to a loss in the market value of the store, they were premature, until it was shown that dampness im cellars; depreciated such value; and if it had been shown, the defendants could not lose what, by the terms of the lease, they had no right to gain.
For which reasons, as the exceptions to such questions were well taken, it renders any consideration of other topics- almost unnecessary. The defendants, for their own sakes, would have been obliged to do something to prevent the effects of the water. They could not legally have allowed it- either to remain or re-enter, so as to produce all the harm it .could, in order to recover all the damages they could therefor from the plaintiffs. The contract is one of indemnity merely; in fact, closely, resembling that of insurance, particularly- as it is against one of the elements. "The defendants are> therefore, entitled to compensation for actual loss alone, for the expense of repairing past and preventing future evils, besides deprivation of temporary use ‘of the building or permanent deterioration of it. The acts done by the plaintiffs may net have been strictly repairs; their entry, however, was under the defendants license until May, 1862. Ho physical obstruction was ever placed in the way of their proceedings, and they completed! the work of excluding the water from the cellar. The notices, given in May and July of that year of course did not disentitlethe defendants to compensation for damages-, which were .the natural and necessary result of the percolation of water, and either not caused by their own delay i® preventing repairs or | caused by the improper delay of the plaintiffs, who. undertook to make them; hut they had no other effect. What might have been the rights of the parties, if the plaintiffs had retired ■pursuant to such notices, it is not neocessary to decide. •
*191 The judgment, therefore, should he reversed, and a new trial granted, with costs to abide the event.
McCunn, J.
This is a case where the plaintiffs obtained a judgment for a certain amount, but for a less sum than they claimed in their complaint. With the amount so awarded them by the jury, the plaintiffs were dissatisfied and perfected an appeal from the judgment at circuit to the general term, this they had a clear right to do. After the perfecting of such appeal, on the part of the plaintiffs, the defendants tendered the amount of the judgment and costs up to the time of the tender, together with interest ■ this amount the plaintiffs saw fit to accept, without any qualification, and refusing to discontinue their appeal. A motion was made at special term to compel the plaintiffs to abandon their appeal, the defendants alleging as grounds for such a motion, that the acceptance of the amount of the judgment, with interests and costs up to the time of the tender, was a satisfaction and settlement of all difficulties between the parties, and consequently an abandonment of the appeal.
The learned judge who heard the application below, denied the motion, and the defendants thereupon appealed to this branch of the court.
There is but a single question for us to determine, and that is, did such a tender by the defendants, and the acceptance of the same by plaintiffs, without any qualification, stipulation, or consent, hinder a further prosecution of plaintiffs' appeal ?
Now for the purpose of determining this question, it is not necessary that we should enter into a discussion of the merits of the case, or as to what the rights of the parties are under ■ the lease in question; these matters have all been disposed of for the time being, by the verdict of a jury under the instructions of the court below,
We are, therefore, limited in this matter to the single question, does the acceptance of the tender under the circumstances entitle the defendants to a dismissal of the appeal ? I am clearly of opinion that it does not.
*192 The tender of the amount of the judgment, and when the litigation is still pending, can be considered no more -than an equivalent to a payment of the amount of the judgment into court, and certainly it will not be contended for a moment, that a payment into court of the amount, would in any way bar the plaintiffs’ appeal. The only effect it could, by any possibility, have upon the proceedings, would be to affect the question of costs and interest from the time the tender to the plaintiffs was made.
It is quite true that section 385 of the Code reads that, “ at any time before trial or verdict the defendant can serve upon the plaintiff an offer in writing of a certain amount, &c., and if the plaintiff fail to obtain a verdict more favourable than the offer, he cannot recover costs, or interest, from that time.” On the contrary he must respond in costs and interest,
It is true the section provides for the trial or verdict, but the answer to this is, that the old rule of law of tender is in full force and effect, notwithstanding this section, and under that rule, a party could come into court and plead tender at any time before final judgment, in a court of last resort, and the only effect such a tender had was simply to affect the question of costs and interest from the time of such tender. It does not act as a discontinuance of the appeal. This being the case, the party to whom the tender was made, had the right to accept the same, and the only effect such acceptance had on his case, was the same it will have in this case, if the defendants are successful in preventing the plaintiff from recovering a greater amount of damages against him.
I hold that the defendants had a perfect right to tender the amount, and the plaintiff as clear a right to accept the same, and that such acceptance does not entitle the defendants to a dismissal of the appeal in this case. All it does is to affect the question of costs and interest, from the time of such tender; the cases cited by the defendants’ counsel do not apply in this case.