THE PEOPLE EX REL. STEPHEN MURPHY v. FREDERICK G. GEDNEY,. JUSTICE, ETC., RESPONDENT.

*Lease — demised premises — alley-way — when included in — Curtilage — meaning of — when it passes — Statement of landlord as to demised premises — when admissible — Implied covenant for quiet enjoyment in lease — Eviction — summary proceedings — Quantum meruit.*

The plaintiff's assignor demised to the defendant "the house No. 324 East Fifty-eighth street, in the city of New York." At the time of the demise an alley-way, some five feet in width, ran along the side of the house to a door opening thereon, and to the coal sheds in rear thereof; said alley-way being separated from the adjoining premises by a fence. At the time of the demise, the alley-way was pointed out by the lessor as a portion of the demised premises. The plaintiff, having acquired the rights of the lessor in said lease, erected a building upon the adjoining lot, of which he was the owner, which encroached upon the alley-way some forty-eight inches, thereby injuriously affecting the approach to the door and sheds, and the light and ventilation of the house. Summary proceedings having been instituted to remove the tenant for non-payment of rent; *held,*

(1) That the plaintiff had no greater rights than had his assignor, and that his right to maintain the action was not strengthened by the fact that he claimed to be the owner of the portion of the alley upon which the building was erected;

(2) That the alley-way formed a portion of the demised premises;

(3) That, by the erecting of the building thereon, the tenant was evicted from a portion of the said premises;

(4) That the plaintiff could not maintain an action to eject him for non-payment of rent.

Upon the grant or demise of a house the curtilage or garden thereof will pass, even though the words "with the appurtenances" are not contained in such grant or demise.

By the curtilage of a house is meant the courtyard in the front or rear, or at the side thereof, or any piece of ground lying near and enclosed and used with the same and necessary for its convenient occupation.

In an action to eject a tenant it is competent to prove the statements of the land-lord made at the time of pointing out the demised premises, for the purpose of identifying the subject of the lease.

Although a lease contains no covenant of quiet enjoyment, yet there is an implied covenant on the part of the lessor to do no act which will evict the tenant from any substantially valuable portion of the premises.

Where a tenant has been evicted by the landlord from a portion of the demised premises of substantial value, he cannot be evicted in summary proceedings for non-payment of rent so long as such eviction continues.

*Quære,* as to the right of the lessor to bring an action upon a *quantum meruit* to recover the value of the premises still occupied by the tenant.

CERTIORARI to review proceedings had before the respondent, a justice of the District Courts in the city of New York, in summary proceedings between landlord and tenant.

*Julien F. Davies,* for the relator.

*Albert Matthews,* for the respondent.

DAVIS, P. J.:

On the first day of June, 1874, Mary Devlin demised, by lease under her hand and seal, to Stephen Murphy, premises described in said lease as "the house No. 324 East Fifty-eighth street, in the city of New York," for the term of one year, at a yearly rent of $800, payable monthly in advance; and agreed in the lease that the lessee might, at his option, continue in said premises for five years from the first of June, 1875, at the same rent; and that she would put and keep said premises in repair during the term. The lease contained a covenant of re-entry in case of default in payment of rent. Murphy exercised his right of option to continue the lease for the additional five years; and on May 31st, 1876, Mary Devlin assigned the lease, and all rents to accrue thereunder, to John McKim. McKim, as such assignee, instituted proceedings before the respondent, to remove Murphy from the possession of the premises, for non-payment of two months' rent, which fell due on the first of October and November, 1876, alleging a demand of the rent and default in the payment thereof, and that Murphy and his subtenant continued to hold over and have possession without permission after such default.

First Department, March Term, 1877.

The usual summons was thereupon issued by the respondent; and on the return day of the summons Murphy appeared and made affidavit denying that the rent claimed in the affidavit of McKim was due, and setting forth that McKim had wrongfully entered upon the demised premises and taken possession and evicted the tenant from a strip of ground thirty feet in length and three feet four inches in width, extending across the lot; and had placed thereon a building; that the portion so taken was a passage-way leading from the street to a door at the side of the house, and to the coal and wood-house back of, and belonging to the said house; and that by reason of placing the building thereon the tenant was deprived of such way leading from the street, and of the use of the door at the side of the house; and that the light and ventilation of the said house on the side next adjoining the building were shut off; that McKim has since continued in possession of the strip of land, and that no part of the rent was due from the tenant at the time of the entry and erection of the building by McKim; and he, in substance, claimed that no rent was due in consequence of such eviction.

It was proved at the trial, that at the time Murphy leased the house of Mrs. Devlin, there was an alley-way, or side entry, about five feet wide, and a side stoop leading to the side entrance of the house, and that Mrs. Devlin pointed out to the tenant this alley as a part of the property she was leasing; that the alley-way was closed in by a high fence between it and the adjoining lots; that there was a flag walk in the center of such way, and that such passage extended back of the rear of the house about twenty feet; that the fence between it and the adjacent premises was seven or eight feet high; that there was a gate in front of the alley-way with a lock and key, which was kept by the tenant, and wooden steps from the door on the side of the house down to the alley-way; that the tenant took possession of the premises, including this alley-way, and he and his subtenant continued to enjoy the same until McKim, after the assignment of the lease to him, took down the fence and erected the building, which occupied forty-two inches in width of the alley-way, thirty or thirty-eight feet in depth, leaving eighteen inches in width only of the passage-way, and taking away the stoop; and that the building excluded light and air to some

extent from the house; and that this building was placed there against the objections of the lessee.

In this proceeding McKim, as assignee of the lease, occupies precisely the same relation towards the tenant as the original landlord under the lease, and can only enforce the provisions of the lease to the same extent Mrs. Devlin could have done if she were the complainant in the proceedings to remove the tenant.

The point is made that the lease made by Mrs. Devlin does not include the alley-way described in the affidavit of Murphy, but by its language is limited to the land covered by the house. The language of the lease is, "house No. 324 East Fifty-eighth street," and nothing is said concerning appurtenances or privileges of any character. This, however, is altogether too narrow a construction of the instrument. The piece of ground constituting the alley-way was inclosed with the house by a high, board fence, and was in the possession of Mrs. Devlin; it was occupied in part by the stoop leading to the side-door of the house and by a walk of flagging extending to the gate on the street, and it appears without dispute to have been pointed out to the lessee as a part of the demised premises. There seems to be no doubt that, by the grant or demise of a house, the curtilage, or garden, will pass without the words "with the appurtenances" being added. The curtilage is the court-yard in the front or rear of a house, or at its side, or any piece of ground lying near inclosed and used with the house and necessary for the convenient occupation of the house. (Bacon's Abridgment, title "Grant," 1 and 3; *Clements* v. *Collins*, 2 T. R., 502.)

It was competent to prove the statement of the landlord, made at the time of pointing out the demised premises, for the purpose of identifying the subject of the lease. (*Knapp* v. *Warner*, 57 N. Y., 668; *Hope* v. *Balen*, 58 id, 380; *Pettit* v. *Shepard*, 32 id., 97.)

There was no covenant of quiet enjoyment in the lease, but the lessor was bound by an implied covenant to do no act which would evict the tenant from any substantially valuable portion of the premises. (Taylor's Landlord and Tenant, §§ 304, 318; *Mayor, etc.*, v. *Mabie*, 13 N. Y., 151; *Vernam* v. *Smith*, 15 id., 327; *Mack* v. *Patchin*, 42 id., 171.)

There seems to be no reason to doubt that if the lessor, Mrs. Devlin, had entered upon and taken possession of the alley-way,

against the objection of the tenant, and deprived him of the use thereof by the erection of a permanent structure thereon, it would have been an eviction on her part in violation of the rights of the tenant under the lease.

The assignee, McKim, so far as relates to this proceeding under the lease, comes precisely into her position and is subject under this proceeding, which is predicated altogether upon the right of re-entry given by the lease, to the same defense that would have existed against her were she seeking the same remedy. The fact, therefore, which was admitted in proof, that McKim was the owner in fee of the land adjacent to these premises, and of the ground taken possession of by him in erecting the new house, seems to us immaterial in this controversy, for in this proceeding he can be regarded in no light except those which spring out of his relation as landlord, under and by virtue of the assignment of the lease made by Mrs. Devlin to him.

Upon the evidence, therefore, it was a case in which the tenant had been evicted by the landlord, against his objection, from a substantial portion of the demised premises. According to a long line of authorities such an eviction precluded the recovery of rent accruing subsequent to the eviction and while it continues. (*Lawrence* v. *French*, 25 Wend., 443 ; S. C., 7 Hill, 519 ; *Edgerton* v. *Page*, 20 N. Y., 283 ; *Christopher* v. *Austin*, 1 Kernan, 217 ; *Pendleton* v. *Dyett*, 4 Cow., 581 ; *Peck* v. *Hiler*, 24 Barb., 178.)

The tenant having ceased by the act of his landlord to become legally liable for the rent, by a permanent occupation operating as an utter exclusion from a portion of the demised premises, the proceedings to remove him for non-payment of rent, cannot, we think, be upheld upon any sound principle of law.

We do not intend to pass upon the question whether the tenant may be liable in an action upon a *quantum meruit*, for the occupation of a portion of the premises ; nor whether the landlord in this case, upon his paramount title, may institute other proceedings to recover possession, independently of the lease, based upon his rights as owner in fee. We go no further than to hold, that in this proceeding, in which he can insist upon no right superior to those which the assignor of the lease could have claimed, the defense of eviction is complete.

The proceedings must be reversed, and a judgment of restoration entered in favor of the relator, with costs against the landlord.

BRADY and DANIELS, JJ., concurred.

Proceedings reversed; judgment of restoration ordered in favor of relator, costs against the landlord.