Desmond, J.
(dissenting). Plaintiff’s judgment for damages is based on a Trial Term finding, affirmed by the Appellate Division, that the appellant breached a covenant of quiet enjoyment contained in a lease by defendant to plaintiff of vacant land in New York City used by plaintiff as a parking lot. The lease by its terms ran for five years from May 1, 1952, but on May 1, 1954 plaintiff was deprived of all rights under the lease when the City of New York acquired the premises in condemnation proceedings. The facts hereinafter set forth in more detail justified the trial court’s finding that defendant itself had induced and brought about the condemnation proceeding. It can hardly be doubted that a landlord who leases land for a term of years and then turns around and makes an arrangement such as is hereinafter described and whereby the tenant is ousted, violates both the letter and the spirit of the quiet enjoyment covenant. That covenant in the lease under consideration read as follows: “ The said Landlord doth covenant that the said Tenant on paying the said rent and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid.”
Plaintiff’s occupancy of this land began in 1941. In 1947 he took from the then owner, one Higgins, a two-year lease. Higgins died in 1948 and defendant as a testamentary trustee took title to the premises. During the term of that earlier or 1947 lease New York City officials had shown some interest in the possible purchase of the land for use as a playground appurtenant to an adjoining public school. Defendant trustee, after it took title, had some inconclusive negotiations with the city authorities looking to such a sale but, when these did not come to a head, defendant, as of May 1, 1952, made the lease above referred to with plaintiff who had remained in possession *118 without a lease from 1949 to 1952. In January, 1953, 9 or 10 months after the making of the second lease containing the quiet enjoyment covenant, the city inquired from defendant whether the property was for sale and, when defendant replied that it was, the city in March, 1953 made an offer to purchase it for $135,000, a little more than the amount of an appraisal which had been made for defendant. Defendant indicated agreement, sent to the city a proposed contract of sale at that price, and notified the city that the sale would be subject to plaintiff’s lease. The city replied that it could not sign the contract unless and until defendant obtained a release of the rights of this plaintiff as tenant. Defendant did nothing toward getting such a release. Next, the city notified defendant that the city would be agreeable to an arrangement whereby the city would obtain title through condemnation proceedings but would be given, by defendant, an option to purchase for $135,000 an assignment of the award that would be made to defendant in the condemnation proceedings. That arrangement was carried out completely with the result that the city acquired the property for the price of $135,000 as originally agreed upon. But the tenant lost all its rights to occupancy or compensation since his 1952 lease contained a provision that if the leased premises should be taken by condemnation, the lease should terminate as if its term had expired, and that the tenant in that event should not be entitled to any part of the condemnation award.
There is no claim here that the arrangement voluntarily made between defendant and the city was invalid as between those two parties (see Administrative Code of City of New York, § B15-30.0). The theory on which plaintiff has recovered is that regardless of such validity the landlord breached the lease and violated plaintiff’s rights by co-operating in and agreeing to an arrangement (which the landlord did not have to make) whereby there was a sale of the property at a previously agreed price with complete destruction of the tenant’s rights, even though the arrangement took the form of a condemnation proceeding with a prior agreement that the owner’s award should be sold back to the city at a price agreed on in advance. ‘ ‘ The main object of a covenant for quiet enjoyment is to protect the lessee from the lawful claims of third persons having a title paramount to the lessor; but such a covenant * * * *119 provides also for the protection of the lessee against the unlawful entry of the lessor himself ” (Mayor of City of New York v. Mabie, 13 N. Y. 151, 156; see 2 McAdam on Landlord and Tenant [5th ed.], pp. 1528, 1570, 1571). The covenant can mean no less than that the landlord will “ abstain from interfering with the right ” granted by him to the tenant (Mabie case, supra, p. 157). When the landlord despite the lease and the covenant presumes to exercise dominion over the property by his own re-entry or by granting rights to others inconsistent with the lease, the landlord breaches the covenant. Under defendant’s theory, a landlord could make a lease for a long period, include therein a covenant for quiet enjoyment, permit the tenant to enter and establish himself in the property and then turn around and act toward the property as if there were no lease at all. And all this without incurring any obligation to reimburse the tenant for his loss.
The landlord’s defense to this suit can be summed up in a sentence from its brief: “No tenant can recover damages from his landlord merely because a municipality condemns the property which is the subject of his lease ”. But this plaintiff has been awarded damages not because the municipality exercised its power of eminent domain, but because the landlord induced and made possible the bringing of condemnation proceedings by agreeing to what was, in effect, a voluntary sale. The difference is between an involuntary transfer of the property by the landlord and a carefully worked out bilateral agreement which, although in form a taking by condemnation, was in fact a voluntary sale of the property to the city. The taking of this property by the city was not in hostility to defendant’s title but was the carrying out of a bargain. The naked fact that title passed pursuant to a condemnation decree does not invalidate the finding made here that it was the landlord’s agreement which resulted in the ouster of plaintiff. An illustrative case is Lindwall v. May (111 App. Div. 457) where it was held that a tenant could recover damages for a breach of a covenant of quiet enjoyment although the building had actually been torn down by the municipal authorities as unsafe. It was the landlord’s neglect that had produced the violation which in turn produced the lawful governmental act of destroying the property which was the subject of the lease. The Appellate Division held in the Lindwall case (supra) that the *120 destruction of the premises and the consequent eviction would not have occurred had the landlord performed its duty. In the present case the landlord’s duty was to protect the rights which it had granted to plaintiff. Instead of doing so it agreed to a method of ousting him. Kip v. New Yorlc & H. R. R. Co. (67 N. Y. 227) is not in point here since it deals with the right to condemn of a tenant who had the power of eminent domain. Goodyear Shoe Mach. Co. v. Boston Term. Co. (176 Mass. 115) is likewise without pertinence here, since the landlord in that case merely exercised its own power of condemnation.
If there is any douht as to the meaning of this lease, that doubt “ must be resolved against the landlord and in favor of the tenant ” (455 Seventh Ave. v. Hussey Realty Corp., 295 N. Y. 166, 172). That settled rule of lease construction should be most strongly applied when the result of a construction in favor of the landlord would be to permit the landlord to forfeit the tenant’s valuable remaining term without compensation.
Affirmance of this judgment would not impair or affect the city’s practice of arranging in advance an assignment of awards in condemnation proceedings. Affirmance will merely force landlords to perform their covenants.
The measure of damages here applied, that is, the value of the unexpired term less the rent reserved, was correct (Mack v. Patchin, 42 N. Y. 167).
The judgment should be affirmed, with costs.
Dye, Froessel and Burke, JJ., concur with Conway, Ch. J.; Fuld, J., concurs in result; Desmond, J., dissents in an opinion in which Van Voorhis, J., concurs.
Judgments reversed, etc.