### EVANS v. HUGHES COUNTY.

1. The right to maintain and operate a ferry and collect tolls is a franchise. It is a sovereign prerogative, and in this country vests in individuals only by legislative grant; and it makes no difference whether the grant is made directly by the legislature or by a subordinate body to whom the power is delegated, it is still a grant emanating from the authority of the state.

2. A board of county commissioners of a county, in granting a ferry lease under the laws of this state, acts as the agent of the state, and not of the county.

3. The grant of such ferry lease by the board of commissioners does not constitute a sale or lease of the property of the county, and does not impose upon the county any liability to refund to the grantee of such lease money paid by him as rent in case the law under which it is granted should be held invalid.

(Syllabus by the Court. Opinion filed March 2, 1893.)

Appeal from circuit court, Hughes county. Hon. H. G. FULLER, Judge.

This case was decided by this court Aug. 17, 1892. In an opinion found in 3 S. D. 244, 52 N. W. 1062, the court affirmed the decision of the lower court. Appellant petitions for a rehearing. Denied.

*H. E. Dewey,* for appellant.

*L. E. Gaffy* and *Coe I. Crawford,* for respondent.

CORSON, J. This case comes before us on a petition for a rehearing. It was decided at the April, 1892, term of this court, and is reported in 52 N. W. Rep. 1062. The appeal was from an order sustaining a demurrer to the complaint, and the facts are fully stated in the opinion. The action was instituted to recover the sum of $1,800 alleged to have been paid by the assignor of the plaintiff for the grant of a lease for a ferry, which it is alleged in the complaint, was invalid, because the law under which the same was granted was in contravention of the organic act. This court held—assuming, as contended by counsel for the appellant, that the law of the territorial legislature was in conflict with the organic act—that the mistake as to the validity of the law was one

of law and not of fact, and therefore the plaintiff could not re-
cover back the money so paid for the lease made in pursuance of
the law.   Mr. Justice KELLAM, in delivering the opinion of the
court, confined his discussion of the case to that question.   The
learned counsel for the appellant now insists in his petition for
a rehearing that this court did not give sufficient consideration to
the main ground upon which he relied for a recovery, namely, that
there was an implied covenant of title; that the county possessed
the power to grant the lease, and that the lessee should have the
quiet and undisturbed possession of the ferry privilege, contend-
ing that his action is for a breach of these implied covenants.

In order to determine whether or not the position of the coun-
sel has sufficient merit to entitle him to a reargument, we have
examined the question and authorities he presents, and have
reached the conclusion that his position is untenable, and cannot
be sustained.   His contention is, as we understand it, that the
grant of the ferry lease was either a sale of a chattel interest, or
a lease of an incorporeal hereditament, and in either case there
was an implied covenant of warranty,—in the former case of title,
and in the latter case of quiet enjoyment by the lessee of the privi-
lege granted,—and for a breach of this implied covenant he can
recover in this action.   We are of the opinion that the grant of
the lease in question was neither a sale nor a lease of property,
incorporeal or otherwise, as usually understood by the use of the
term "lease."   The grant was of the right to maintain and operate
a ferry over the Missouri river between the city of Pierre and Ft.
Pierre, and to collect tolls for transporting persons and property,
for a period of seven years, upon the payment of about $1,000 an-
nually.   The right to so maintain and operate such ferry and col-
lect tolls is a franchise.   It is a right only vested in individuals
by grant from the government.   It is a sovereign prerogative, and
in this country vests in an individual only by a legislative grant;
and it makes no difference whether the grant be made directly
by the legislature or by a subordinate body to whom the power is
delegated; it is still a grant emanating from the authority of the
state.   Turnpike Road Co. v. Campbell, 44 Cal. 89; Charles River
Bridge Co. v. Warren Bridge Co., 11 Pet. 536; Tied. Lim. Police

Power, p. 316.   It was said in an early English case that "a ferry is *publici juris*.   It is a franchise that no one can erect without a license from the crown."   Blessett v. Hart, Willes, 508.   In the hands of the subject it may become an incorporeal hereditament that may be leased or assigned, if not prohibited by the grant; but in the case at bar no grant of the franchise had been made to the county of Hughes as such county.   The statute under which this grant was made is found in sections 1361-1369, Comp. Laws. By section 1361 it is provided that it shall be unlawful for any person to establish a ferry without having first obtained a license therefor.   The .following section confers upon boards of county commissioners of organized counties authority to grant ferry leases upon the terms and conditions therein specified.   The next section prescribes .the maximum of rates to be charged as tolls. In unorganized counties the authority to grant leases is conferred upon the secretary of state; and by section 1367 it is provided that all receipts for rent received by .the board of county commissioners shall be paid over by them to the county treasurer, and by him apportioned to the school fund of the county.   It will thus be seen that boards of county commissioners and. the secretary of state are made agents of the state to grant ferry leases, and that the county, as such, has no property in such franchises. Such board of county commissioners, being the agent of the state, has only the authority conferred upon it by the legislature.   It could only exercise .the power conferred upon it by the state, and in the manner prescribed by the state law, and apply the rent received to the purposes specified in the law.   The county did not receive such funds for general county purposes, to .be disposed of as the board may direct, but its treasurer received it as a special school fund.   The lessee in this case was fully notified by a clause in the lease that the board only granted such lease as it was authorized to grant by the law,—"as fully as the power is given to said first party by the statute of the territory in regard to the leasing of ferries by county commissioners."   From this review of the statute under which the lease in this case was granted, the conclusion seems to follow that the board of county commissioners made no sale or lease of property belonging to the

county, but simply exercised a power vested in such board by the
legislature; and, the board in this case having strictly followed
the provisions of the law, its proceedings imposed no liability
upon the county. If the law under which the board acted was a
valid law, the lessee obtained all he contracted for. If the law
was not a valid law, the board of county commissioners were not
authorized to bind the county by any express or implied covenant
to refund the money paid. The county, as we have seen, as such,
received no money for the grant. It would therefore be mani-
festly unjust to require it to refund money that it cannot now
withdraw from the school fund, into which the money was paid.

The cases cited by the counsel for appellant to sustain his po-
sition have no application, we think, to a case like the one at bar.
Mayor v. Mabie, 13 N. Y. 151, was a case where the city leased
the privilege of collecting certain wharfage, of which the city
was the owner, and the court held there was an implied warrant
for quiet enjoyment. It was the lease of an incorporeal heredita-
ment, it is true, but not made by the city as the agent of the state,
but of its own city property, and the rents collected therefrom
went into the city treasury for city purposes. The cases of Gro-
gan v. City of San Francisco, 18 Cal. 590, and Pimental v.
Same, 21 Cal. 351, known as the "City Slip Cases," were ac-
tions brought to recover back money paid for property be-
longing to the city, to which the title of the purchasers
were held invalid by reason of the failure of the city to comply
with the law in making the sales. The city owned the property
and had full power to convey it in a prescribed manner, which the
city failed to observe in making the sale, but it received the con-
sideration and applied it to city purposes; and the court, in their
decisions, say it would be manifestly unjust for the city to retain
the property and money paid for it also. The case of Hurd
v. Hall, 12 Wis. 112, much relied on by counsel, was a case
of the sale of school-land certificates held by a private party,
which were wrongfully issued by the state-land commissioners.
The court held that the purchaser's "ignorance that said lands
had not been offered for resale at public auction by said commis-
sioners (as the law required before new certificates could be is-

sued) was such a mistake or ignorance of a fact as gave him a right in equity to a rescission of the contract." In the case at bar the proceedings of the board of county commissioners were in strict conformity to the law. No act was omitted to be done required by the law to be performed by it. The rule governing this class of cases is well stated in the case of Boston & Sandwich Glass Co. v. City of Boston, 4 Metc. (Mass.) 181, as follows: "The legal principle relied upon on this point is this: That if a party, with full knowledge of all the facts of the case, voluntarily pays money in satisfaction or discharge of a demand unjustly made on him, he cannot afterwards allege such payment to have been made by compulsion, and recover back the money, even though he should protest, at the time of such payment, that he was not legally bound to pay the same. The reason of the rule, and its propriety, are quite obvious, when applied to a case of payment upon a mere demand of money, unaccompanied with any power or authority to inforce such demand except by a suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and, if litigation is intended by the party of whom the money is demanded, it should precede payment." The case of County of La Salle v. Simmons, 5 Gilman, 513, would seem on a casual reading to support the contention of appellant, but, when carefully examined, it will be found not to be in conflict with the general doctrine stated. That was an action to recover back money paid for a ferry lease, and the plaintiff recovered, and the judgment was sustained by the supreme court. There was no question as to the validity of the law or the lease; but the board of county commissioners, though the amount they could charge as rent for the lease was limited to $100 per annum, exacted of the plaintiff $500 per annum. Upon the ground that the board extorted the payment of the extra $400 from the plaintiff without any authority of law, he was held entitled to recover it back. The court says: "They had no right to annex conditions or impose restrictions not imposed by the statute. In this case they decided to establish the ferry, but chose only to grant the license to the person that would pay the largest amount of

money for the franchise in addition to the tax which they might
legally impose; in other words, the privilege of ferriage was put
up at public auction to the highest bidder. The law conferred
no such power on the commissioners. In the granting of licenses
they were bound to keep within the provisions of the statute con-
ferring the power and regulating its exercise. What was the con-
dition of the plaintiff, and what effect did this unauthorized ar-
rangement of the commissioners have upon him? He had been
keeping the ferry, and was anxious to secure a continuance of the
privilege; but, instead of being permitted to have it by complying
with the requisitions of the statute and submitting to pay the high-
est tax which could be assessed on the franchise, he was compelled
by the force of circumstances, over which he had no control, to
advance a large sum of money, in order to obtain the license. The
illegal conduct of the commissioners put the plaintiff in their pow-
er, and, taking advantage of his peculiar situation, they obtained
money from him to which the county had not the shadow of right.
The money was unlawfully and wrongfully obtained, and cannot,
in equity and good conscience, be retained by the county."

The case at bar is clearly one—if the contention that the law
was invalid is correct—of a mutual mistake of the parties as to
the law. Both supposed it to be valid, and the lease was granted
and received upon that theory. If, as claimed by the counsel for
appellant, the law was invalid, and the appellant or his grantor
did not obtain the privilege he expected under the grant, it was his
misfortune, for which the law affords him no remedy. We do not
wish to be understood as expressing any opinion as to the validity
of the law under which the lease was assumed to be granted.
There is nothing, we think, stated in the complaint in this case
to take it out of the general principle that when a party, without
mistake of fact, or fraud, duress, or extortion, voluntarily pays
money on a demand which is not enforceable against him, he can-
not recover it back. The lessee in this case was at liberty to take
the lease or not, as he saw fit. A refusal to pay would have result-
ed merely in his not obtaining the ferry privilege. He could and
did use his own judgment as to the validity of the law, and when
he decided to take the lease, and pay his money, it was a purely

voluntary act on his part. See, in addition to the authorities cited in the principal opinion, the following cases: Emery v. City of Lowell, 127 Mass. 138; Custin v. City of Viroqua, 67 Wis. 314, 30 N. W. Rep. 515; Flower v. Lance, 59 N. Y. 603; Sooy v. State, 38 N. J. Law, 324; Clarke v. Dutcher, 9 Cow. 674; Brummagim v. Tillinghast, 18 Cal. 265; Detroit v. Martin, 34 Mich. 170; Town v. Burnett, 34 Ala. 400; Harvey v. President, etc., of Olney, 42 Ill. 336; City of Camden v. Green, (N. J. Err. & App.) 25 Atl. Rep. 357; Schwarzenbach v. Apparatus Co., (Md.) 3 Atl. Rep. 676; Town of Ligonier v. Ackerman, 46 Ind. 552. The latter case reviews the cases upon this question very fully. Entertaining these views, we cannot think a rehearing could possibly change them. The rehearing is therefore denied.