## NIXON *et al.* v. REID *et al.*

1. Comp. Laws, §§ 1361-1369, providing for granting ferry licenses, are not invalid, as being in conflict with Sec. 1889 of the organic act of the Territory of Dakota, which prohibits the territories from granting private charters or special privileges, said ferry law having been passed in 1866, and acquiesced in by congress for over 25 years.

2. The ferry law, since it was applicable to all the counties in which there are rivers requiring ferries, is not a local or special law, within the meaning of the act of congress of July 30, 1886, prohibiting territories from passing special or local laws chartering or licensing ferries.

3. The ferry law is not in conflict with the provisions of the constitution of South Dakota, prohibiting the legislature from enacting any private or special laws authorizing persons to keep ferries across streams wholly within the state.

4. A lease by a board of county commissioners granting plaintiff an exclusive ferry privilege at a designated point within the county, on the east bank of the river, is not void for the reason that the western terminus of the ferry is within the limit of an Indian reservation under the jurisdiction of the United States, the place where the ferry was established being within the jurisdiction of the county board.

5. A ferry lease granted by a board of county commissioners for the term of five years, with the privilege of renewal for five years, and, at the end of that time, a second renewal for five years, is within the powers of the board under a law giving the board authority to grant such leases for a term not exceeding 15 years.

6. An assignment of such lease, accepted and approved by the board of county commissioners, is valid to pass all the rights thereunder.

7. A ferry license granted by the board of county commissioners authorizing the maintenance of a ferry at a designated point is exclusive, under Comp. Laws 1887, §§ 1361–1369, providing that ferry licenses shall not be granted at points on the same stream within two miles of each other.

(Opinion filed April 18, 1896.)

Appeal from circuit court, Potter county. Hon. LORING E. GAFFY, Judge.

Action to enjoin defendants from operating a ferry across the Missouri river at Forest City, South Dakota. Defendants' demurrer to the complaint was overruled, and they appealed. Affirmed.

The facts are fully stated in the opinion.

*John A. Holmes* and *Crawford & DeLand*, for appellants.

This lease does not in terms nor in legal effect grant an exclusive ferry privilege. Fanning v. Gregoire, 16 How. 524; S. C., 14 Law Ed., 1043. A legislative grant is not necessarily exclusive, nor is the one in question. Power v. Village of Athens (N. Y.), 2 N. E. 609; High on Inj. § 595; 2 Wash. on Real Pr., pp. 272-3. Plaintiffs must show an exclusive ferry privilege in order to maintain this injunction. High on Inj., § 587; Butt v. Colbert, 24 Tex., 355. A simple grant of the right to establish a public ferry cannot be construed to be exclusive, but is subject to such future grants as public convenience may require. Bush v. Peru Bridge Co., 3 Ind. 21. See

also State v. Wise, 7 Ind. 644; McEwen v. Taylor, 4 G. Green (Ia.), 532; Gales v. Anderson, 13 Ill. 413; Cooley's Const. Lim. 396 and cases cited; Harrison v. State, 9 Mo. 530 (new p. 312); § 1364, Comp. Laws; Cayuga Bridge Co. v. Magee, 6 Wend. 85. At the time of the enactment of the act in question, the entire country bordering on the Missouri river opposite the western boundary of Potter county, was and is still an Indian country, inhabited exclusively by the Sioux tribe of Indians; and congress had the sole power to regulate commerce with that tribe of Indians, as well as among the several states.    § 8, Art. 1, Fed. Const.  And of this the court must take judicial notice. Greenl. Ev., § 5 and cases cited.  See also, Ordronaux's Const. Leg., 475–6; Worcester v. Georgia, 6 Pet. 515; Gibbons v. Ogden, 9 Wheat., 196; Story on Const., §§ 1061, 1072; The Passenger Cases, 7 How. 283; U. S. v. Holliday, 3 Wall. 417; Brown v. Maryland, 12 Wheat. 445; People v. Brooks, 4 Den. 469; Elliott on Roads and Streets, 27; Weld v. Chapman, 2 Iowa 524; §§ 1361, 1366, Comp. Laws; Ross v. Page, 6 Ohio, 166; Gear v. Bullerick, 34 Ill. 74 (99).  Sections 1361 to 1369, both inclusive, were at the time of their enactment, in conflict with § 1889, U. S. Rev. Stat., which expressly forbid the granting of exclusive privileges in the then Territory of Dakota. City of Elk Point v. Vaughan, 1 Dak. 108.   See also 1 Bouv. L. Dict., Title, "Franchise;" Angell & Ames Corp. § 4; Cal. St. Tel. Co. v. Alta Tel. Co. 22 Cal, 403 and cases cited; Ferris v. Higly, 20 Wall. 380; Cooley's Const. Lim. 44 O. P.; Butchers' Union v. Cresent City, 111 U. S. 746; Charles River Bridge Co. v. Warren, 11 Pet. 432; Truckee Road Co. v. Campbell, 44 Cal., 89; Atkinson v. R. R., 15 Ohio St. 21, 38.

*Robt. B. Fisk* and *I. J. Eales,* for respondents.

The territorial legislature had the right and power to establish public ferries.  Hornbuckle v. Toombs, 18 Wall. 655; Clinton v. Englebrecht, 13 Wall. 441; Territory v. O'Connor, 5 Dak. 405; U. S. v. Conway, 1 Black 603 (L. Ed. bk. 17, p. 203); Swan v. Williams, 2 Mich. 427; Wells v. Oregon Ry. & N. Co,,

15 Fed. 561; Wells, Fargo & Co. v. N. P. Ry. Co., 23 Fed. 469; Southern P. Ry. Co. v. Orton, 6 Sawy. 157; Frye v. Partridge, 82 Ill., 267; City of Elk Point v. Vaughan, 1 Dak. 108; The Charles River Bridge v. Warren Bridge, 11 Pet. 420 (dissenting opinion); Evans v. Hughes County, 6 Dak. 102; subsequent appeal, S. C., 3 S. D. 244, 580. The state not only can grant exclusive privileges within certain defined limits, but in order for the state to have public ferries established and operated, it must grant such exclusive privileges. Mills v. County of St. Clair, (Ill.) 2 Gill. 197; Com. v. Bacon, (Ky.) 13 Bush. 210; Cal. St. Tel. Co. v. Alta Tel. Co., 22 Cal. 398 and cases cited; Murray v. Menefee, 20 Ark. 551; Powers v. Village of Athens, 2 N. E. 609.

CORSON, P. J. This is an appeal by the defendants from an order overruling a demurrer to the complaint. The plaintiffs, under a claim to an exclusive franchise for establishing a ferry across the Missouri river at Forest City, in Potter county instituted this action to enjoin the defendants from maintaining and operating an opposition ferry at that place. The demurrer is interposed upon two grounds, namely, that the complaint does not state facts sufficient to constitute a cause of action, and that the ferry lease, as alleged in said complaint, is illegal and void, under the laws of this state. The complaint states the facts very fully upon which the plaintiffs rely to maintain their action, but a brief summary is all that will be necessary to an understanding of the questions presented for our determination.

It is alleged that in April, 1889, the board of county commissioners of Potter county granted to one Francis B. Bullard a lease of an exclusive ferry privilege on the Missouri river, at a point on the east side of said river, known as ''Steamboat Landing,'' for a term of five years from and after April, 1889, with the refusal to said Bullard for a further term of five years and for a second extension of five years; that a contract was

duly entered into between said Bullard and the said board of county commissioners, a copy of which is given in the complaint; that said Bullard thereafter set up, operated, managed and conducted a ferry, and continued to operate the same until March 27, 1894; that, upon the said last date mentioned, the said Bullard duly assigned and transferred to the plaintiffs all his rights and privileges under said lease, a copy of which assignment is made part of the complaint; that in April, 1894, the plaintiffs applied to the board of county commissioners of said Potter county for an extension of said ferry privilege for an additional term of five years, and for an approval of the transfer of said lease to these plaintiffs; that said board duly passed a resolution approving said assignment and transfer of said franchise to the plaintiffs, and extending said lease for the term of five years, which application and resolution are fully set out in the complaint; that the plaintiffs duly executed a bond as required by law, and since March 27, 1894, have been running, managing, operating and conducting said ferry, with ample facilities for transacting all such ferry business; that they have paid to the county, as provided in said contract, all rents due thereon; that defendants have combined themselves into an association, calling themselves the "Citizens' Ferry Company," and have caused to be built a ferryboat, and, without right or authority, have been running the same from said "Steamboat Landing," in opposition to, and in competition with, said ferry of these plaintiffs; and that said defendants threaten to continue to operate said ferry, to the irreparable damage of the plaintiffs. Plaintiffs pray that an injunction may issue restraining the defendants from continuing to operate said opposition ferry.

The appellants contend: First. That the ferry law of this state was passed in contravention of the organic act of the territory, and is in contravention of the constitution of this state, and is therefore void. Second. The contract, being for a ferry across the Missouri river opposite an Indian reservation, is in

contravention of the laws of the United States relating to inter-course with the Indian tribes, and is therefore illegal and void. Third. That the contract in excess of the five years specified as the first term was unauthorized and void; that, at the time this action was commenced, said lease had expired and terminated. Fourth. That a ferry lease is a franchise, and cannot be assigned or transferred; and that the assignment of said lease by said Bullard to the plaintiffs was void, vesting no right in the plaintiff. All these propositions are controverted by the respondents and they urge that, if all the positions taken by the defendants' counsel are conceded to be correct, yet the defendants cannot attack the proceedings or the franchise, as an action could not only have been brought by and in behalf of the state.

Appellants contend that the act of the territorial legislature (being Secs. 1361-1369, Comp. Laws) providing for the granting of ferry leases was in conflict with Sec. 1389 of the organic act of the territory, which prohibits the territories from "granting private charters or especial privileges." It might be sufficient to say that the territorial supreme court passed upon this question in Evans v. Hughes Co., 6 Dak. 102, 50 N. W. 720. and held the law was not in conflict with the organic act. But, as the decision in that case was a memorandum decision we shall briefly state our reasons for concurring in the views expressed by that court.

The statute relating to the granting of ferry leases was passed, substantially in its present form, in 1866. No act of congress disaffirming it has ever been passed. We may conclude, therefore, that, in the view of congress, there was nothing in the statute conflicting with the organic act. When an act of the territorial legislature has been in force more than a quarter of a century, and acquiesced in by congress, it may be safely assumed that the law has received the implied sanction of congress. In Clinton v. Englebrecht, 13 Wall. 434, the supreme court of the United States, in speaking of a law of the

territory of Utah, says: "In the first place we have observed that the law has received the implied sanction of congress. It has been upon the statute books for more than 12 years. It must have been transmitted to congress soon after it was enacted, for it was the duty of the secretary of the. territory to transmit to that body copies of all laws on or before the 1st of the next December in each year. The simple disapproval by congress at any time would have annulled it. It is no unreasonable inference, therefore, that it was approved by that body." Section 1889 was amended or explained by congress in several acts, the last, to which we shall refer, being the act of July 30, 1886, in which it was provided that the territories shall "not pass special or local laws in any of the following enumerated cases: * * * Chartering or licensing ferries or toll-bridges." It will be noticed that the terms used are "local or special laws." In our view the law in controversy is neither local nor special. It is a law applicable to all the counties of the state in which there are rivers or streams of sufficient magnitude to require the establishment of ferries, and the right to bid for the lease is open and free to all. The law, therefore, is neither local nor special, in the sense those words are used in the act. The granting of ferry licenses or leases is peculiarly within the province of state legislation, and not less so of territorial legislation, the territorial legislature being given power to legislate on all rightful subjects of legislation not inconsistent with the constitution and laws of the United States. Guild v. Bank, 4 S. D. 566, 57 N. W. 499; Territory v. O'Connor, 5 Dak. 405, 41 N. W. 746; Conway v. Taylor's Ex'r, 1 Black 603. In speaking of ferries the supreme court of the United States, in the latter case, says: "There has been now nearly three-quarters of a century of practical interpretation of the constitution. During all that time, as before the constitution had its birth, the states have exercised the power to establish and regulate ferries; congress, never. We have sought in vain for any act of congress which involves the exercise of this power.

That the authority lies within the scope of 'that immense mass' of undelegated powers which are 'reserved to the states respectively,' we think too clear to admit of doubt." In view of the fact, therefore, that the act of the territory relating to leasing ferries has never been disapproved by congress is general in its character, and does not grant any special privilege, but is open to all who choose to bid for the privilege of establishing a ferry, and that control of ferries is especially within the legislative powers of the state, and equally so within those of territories, we conclude that the claim that the act in question is in conflict with the organic act is untenable. As stated by the supreme court of the territory in Evans v. Hughes Co., *supra*, the power to grant ferry leases or licenses belongs to the police power of the state, and may be exercised upon navigable rivers, subject to the power of congress to supersede the subordinate control. Tied. Lim. p. 626; Gibbons v. Ogden, 9 Wheat. 1; Conway v. Taylor's Ex'r, *supra*; Wiggins Ferry Co. v. City of East St. Louis, 107 U. S. 365, 2 Sup. Ct. 257; Parker v. Railroad Co., 109 Mass. 506; People v. Mayor, etc., of City of New York, 32 Barb. 102.

The contention that the west bank of the Missouri river, opposite the "Steamboat Landing," where the plaintiffs were authorized to establish a ferry, is embraced within an Indian reservation, and that the lease is therefore void, is equally untenable. The place where the ferry is established being within the jurisdiction of the board of county commissioners of Potter county, that board was authorized to grant the license or lease. Whatever rights the lessees might have to land on the opposite side of the river was a matter between them and the United States government. But as the government is not complaining of this lease, and the defendants are not asserting any right under the United States so far as the case is now presented, it is not necessary to pass upon the question as to the rights the plaintiffs have under their license to land upon the opposite bank of the river. This is not a matter, however, that affects

NIXON *et al. v.* REID *et al.* 515

April, 1896.]        Opinion of the Court—CORSON, P. J.

the validity of the license to the plaintiffs. This was so de-
cided in the case of People v. Babcock, 11 Wend. 587. In that
case Mr. Justice NELSON, delivering the opinion of the su-
preme court of New York, says: "The county of Niagara ex-
tends westerly to the middle of the Niagara river, and the
power of the court of common pleas of that county to license
ferries within its limits is without qualification. 1 Rev. St. p.
526, § 1. So far as jurisdiction is concerned, it is as complete
over this river to the center thereof as over any other stream
within the county. The privilege of the license may not be as
valuable to the grantee by not extending across the river; but,
as far as it does extend, he is entitled to all the provision of the
law, the object of which is to secure the exclusive privilege of
maintaining a ferry at a designated place. The prohibition in
the eighth section of the act against using a ferry without a
license is, in terms, co-extensive with the power given to
grant a ferry." This case is cited with approval, and quoted
from, in Conway v. Taylor's Ex'r, *supra,* which was also a sim-
ilar case, as the ferry extended from Kentucky to the state of
Ohio. And see, also, Tugwell v. Ferry Co. (Tex. Sup.) 9 S.
W. 120. That the granting of a ferry license is not a regula-
tion of commerce is too well settled to require further discus-
sion. Gibbons v. Ogden, *supra*; Conway v. Taylor's Ex'r, *su-
pra*; Wiggins Ferry Co. v. City of East St. Louis, *supra*; Card-
well v. Bridge Co., 113 U. S. 205, 5 Sup. Ct. 423; Railroad Co.
v. Fuller, 17 Wall. 560; Parkersburg & O. R. Transp. Co. v.
City of Parkersburg, 107 U. S. 691, 2 Sup. Ct. 732; Tugwell v.
Ferry Co., *supra.*

It is next contended that while the board was authorized to
grant a lease for a term not exceeding 15 years, it did not pos-
sess the power to grant a lease for 5 years, with a privilege of
5 or 10 more years, at the option of the licensee. We are un-
able to discover any force in this position. So long as the
board kept within the limitation of 15 years, we can discover
no legal objection to the board making such a contract as to

time, within the limitation, as it might, in its discretion, deem proper. Again, in the case at bar the board made a new contract with the present plaintiffs, and required a new bond, which was given. The lease was made to them in the consideration of their agreement to carry out fully the terms and conditions of said original contract, and to secure which a new bond was given. Unless the assignment was vold, we can discover no legal objection to the lease on account of the time fixed.

It is next contended that, this being a franchise, it was not assignable. Whether or not such a franchise is ordinarily assignable, so as to bind the state without its consent, it is not necessary now to decide, as the assignment in the case at bar was made with the consent of the state, by its agents, the board of county commissioners. People v. Duncan, 41 Cal. 507.

It is also contended that the lease or license is not exclusive, and that the defendants had the right to establish and maintain a ferry at the place, as alleged in the complaint. But the ferry law provides that no other ferry license shall be granted within a distance of two miles thereof across the same stream. As no person is authorized to establish or maintain a ferry without first having obtained a license therefor, the license granted is necessarily exclusive for the two miles on either side thereof. Unless the license when granted was made exclusive by law for the distance specified on either side of the specified point, few persons would be willing to pay a consideration for such license, and incur the expense necessary to procure the requisite boats and machinery for the establishment of such a ferry. The evident design and purpose of the ferry law is to afford sufficient inducements to secure proper ferry appliances for the accommodation of the public, and to secure as large a revenue as possible for the county school fund. The whole matter, with certain limitations, is left to the board of county commissioners, as agents of the state (Evans v. Hughes Co., 3 S. D. 580, 54 N. W. 603), upon the theory that such board will see that the interests of the public are

properly provided for, and the largest possible revenue is obtained for the schools of the county.

The system providing for granting ferry licenses in this state seems to be one usually adopted by the states of the union.    The reasons for holding the ferry license law valid under the organic act applies equally to our state constitution, in which the language used is different, but in meaning substantially the same.    The constitutional provision is: "The legislature is prohibited from enacting any private or special laws in the following cases:    *    *    *    *    Authorizing persons to keep ferries across streams wholly in this state."    Upon the facts stated in the complaint, the court committed no error in overruling the demurrer, and the order overruling the same is affirmed.