STATE OF NORTH DAKOTA EX REL. JOSEPH LEACH and Wm. Friesham, Plaintiffs, v. OSCAR OLSON, Defendant.

(176 N. W. 833.)

**Ferries — complaint held to charge maintaining ferry without license — city cannot grant lease operative in another county.**

The relators, Leach and Friesham, were arrested and brought before a justice of the peace of Morton county, charged with the operation of a ferry without a license, contrary to the provisions of Comp. Laws 1913, § 9777. To the complaint, they entered a demurrer which was overruled, and they were held to answer, and their bail fixed at $200, which they failed to give and they were committed to the custody of the sheriff. They applied to this court for a writ of habeas corpus, which was granted, and a day certain was set for the hearing upon said writ. After the hearing thereon, the same is quashed for the reason stated in the opinion.

Opinion filed November 25, 1909.

Hearing on writ of habeas corpus.
Writ quashed.

*Benton Baker* and *Nuchols & Kelsch,* for plaintiffs and relators.
*L. H. Connolly,* State's Attorney, for the defendant and respondent.

GRACE, J. This is a proceeding by habeas corpus to test the sufficiency of the criminal complaint. The complaint is as follows: "Harry Heskett being first duly sworn says that on the 24th day of July, A. D. 1919, in said county, the above-named defendants did commit the crime of maintaining an unlicensed ferry, committed as follows, to wit: that at said time and place the said Joe Leach and William Friesham, then and there being, did wilfully and unlawfully maintain and operate a ferry boat for profit and hire upon the waters of Missouri river, and did then and there transport and carry passengers, automobiles, teams, and wagons across the said river on said ferry for profit and hire from Morton county, North Dakota, to city of Bismarck, North Dakota, without having first obtained a license to operate the said ferry from the board of county commissioners of Morton county, against the peace and dignity of the state of North Dakota. Wherefore complainant prays that defendants, Joe Leach and William Friesham, may be arrested and dealt with according to law."

Upon the filing of this complaint, the warrant of arrest was issued by one Henke, the justice of the peace for the arrest of these relators and they were taken into custody and brought before said justice of the peace. The defendants demurred to the complaint upon two grounds.

(1) That the complaint does not substantially conform to the requirements of the Code of Criminal Procedure of the state of North Dakota in that it does not particularly set forth the facts constituting the alleged defense; that it does not allege there was a landing of the ferry alleged to have been operated either in the county of Morton, or in the city of Bismarck.

(2) That the facts stated in said complaint do not constitute a public offense or any offense against the laws of the state of North Dakota. The demurrer was overruled and the defendants held to answer, the offense charged in the complaint. The justice court fixed the bail at $200. The defendants did not procure any bail and were committed to the custody of Mr. Olson, the sheriff of Morton county. The rela-

tors then applied to the judge of the district court of Morton county for a writ of habeas corpus which was issued. The matter was heard before said judge, and the writ of habeas corpus theretofore issued by it was quashed.

Thereafter the defendants applied to one of the justices of the supreme court for a writ of habeas corpus which was issued and made returnable on the 5th day of September, 1919. The defendant, Sheriff Olson, has made his return to that writ and justifies his custody of the plaintiffs by reason of proceedings had in the justice court and by virtue of the commitment of the plaintiffs therein issued.

The relators, Leach and Friesham, maintained their imprisonment, detention, and restraint is illegal for three reasons: First, that the facts stated in the criminal complaint do not constitute a public offense; second, that the provisions of § 9777 of the Compiled Laws of 1913, are unconstitutional as being contrary to the provisions of § 61 of the Constitution; third, that for these reasons, the justice of the peace has no jurisdiction over the persons of the petitioners and had no right or authority to issue the warrant of arrest or warrant of commitment of the relators. There is no merit to any contentions of the plaintiffs and relators. The complaint filed with the justice of the peace properly charged a public offense, and the demurrer to it was properly overruled. The warrant of arrest and the warrant of commitment were each lawfully and properly issued.

One of the landings of the ferry in question is within the corporate limits of the city of Bismarck, Burleigh county, North Dakota. The city of Bismarck and the county of Burleigh are on the east side of the Missouri river. The other landing of the ferry is on the west side of the Missouri river, approximately opposite Bismarck, but the same is not within the corporate limits of any city, town, or village, but is within the limits of Morton county.

The relators procured a license from the city of Bismarck for the operation of the ferry, but did not procure a license from the commissioners of Morton county.

Section 2063, Comp. Laws 1913, of North Dakota, authorizes the board of county commissioners of the county to whom application shall
44 N. D.—24.

be made for a ferry, to grant a lease of such ferry for the time, and upon the terms in said section set forth.

The relators did not procure a license from the commissioners of Morton county, and hence had no right or authority to operate a ferry, or have a landing within the jurisdiction of Morton county. The relators, however, claim the right to operate the ferry between Bismarck and Morton county by reason of the license procured from the city of Bismarck, and based such claim of right on the following provision in the above section: "Provided . . . that the mayor and city council of any incorporated city, and the board of trustees of any incorporated town or village in the state of North Dakota, within whose corporate limits the landing of any ferry shall be situated, shall have the sole authority to grant a lease of such ferry and the right to fix the rates for crossing such ferry, etc." This provision of the law, as we view it, gives the city exclusive authority to grant a lease of the ferry, and fix the rates as against the county only in which such city is located. In other words, the landing on the east side of the river is within the corporate limits of the city of Bismarck. It is also within the corporate limits of Burleigh county. Hence, as between the city of Bismarck and Burleigh county, the exclusive right is given to Bismarck as against Burleigh county to authorize the ferry and to fix the charges for crossing such ferry. It is plain, however, that neither the city of Bismarck nor Burleigh county could make any lease of ferry or fix charges which would be of any binding legal effect within the jurisdiction of Morton county. The jurisdiction of Bismarck or the county of Burleigh extends no further than the center of the Missouri river. On the westerly side of the river, Morton county has jurisdiction from where it borders on the river to the center thereof. It would seem, therefore, that the ferry on the westerly side of the Missouri river, and the landing of such ferry being within the exclusive jurisdiction of Morton county, the county commissioners of Morton county would have the exclusive right to grant the lease of such ferry within the jurisdiction of Morton county.

The relators had not procured a license from Morton county to operate such ferry and, as we view it, were acting in direct violation of the provisions of § 9777, Comp. Laws 1913. The proper author-

ities to lease ferries are those denominated in § 2063, and the method of leasing and fixing charges is that prescribed by the same section. The authorities who lease ferries and the method of fixing charges was not changed by the amendment of § 2062 by the 16th Legislative Assembly. Section 2062, before its amendment by the 16th Legislative Assembly, contained the following which were left out of the amendment and re-enactment of the law by the 16th Legislative Assembly, to wit: "And when any ferry lease has been granted, no other lease shall be granted within a distance of 2 miles thereof across the same stream."

It is clear that the writ of habeas corpus issued by this court should be quashed, and it is so held. Costs are awarded neither party.

CHRISTIANSON, Ch. J., and BIRDZELL and ROBINSON, JJ., concur.

BRONSON, J. I dissent. The statutory provisions concerning the granting of a franchise for a ferry are not clear either as to the method of granting such franchise or the extent of the same. The application to some degree, of principles of statutory construction, and the ascertainment of the legislative intent, are the practically sole considerations involved in this proceeding.

Two sets of statutory provisions concern the licensing and operation of ferries.

Section 2062, Comp. Laws 1913 (§ 1167, Rev. Code 1899) was formerly § 1361, Terr. Codes 1887. This section and §§ 2063 to 2070, inclusive, provide for the licensing of a ferry by the board of county commissioners of the county to whom application is made excepting where the landing place of a ferry is within the corporate limits of a city, such city shall then have the sole authority to grant a lease of such ferry. Such sections further provide for the operation of such ferry. Said § 2062 contained also the further provision: "When any ferry lease has been granted no other lease shall be granted within a distance of 2 miles thereof across the same stream.

The Legislative Assembly of 1919 amended and re-enacted said § 2062 by eliminating therefrom the phrase quoted above and by further providing that the county commissioners upon a verified complaint

and hearing had upon ten days' notice to the licensee may cancel any license granted for good cause shown.

Section 9777, Comp. Laws 1913, has come down from statehood being formerly § 6662, Comp. Laws Terr. Codes 1887. This section provides that it shall be a misdemeanor to operate a ferry without a license and further that any license granted by the board of county commissioners of the proper county shall be exclusive to the licensee for a distance of 2 miles from the place where such ferry is located up and down such stream either way.

It is the contention of the relator that § 9777 is now inconsistent with the new re-enacted § 2062, and therefore repealed by reason of the former statute retaining the exclusive franchise feature for 2 miles and the new section expressly eliminating the same, and that further, in any event, said § 9777 is unconstitutional. Neither of these contentions can be upheld. The contention of the unconstitutionality of said § 9777 for the reason that such section contains more than one subject, not expressed in the title, is without merit.

The new § 2062 contains no general repealing clause. The mere fact that the legislature eliminated in the new act the exclusive franchise for 2 miles which is also similarly contained in said § 9777 is no argument that they intended thereby to repeal such provision in such § 9777. The argument can be equally applied that possibly the intention was not to repeal legislation in that regard twice, already more definitely stated in § 9777. The relator further contends that the criminal complaint which is the subject-matter of the writ herein does not state facts sufficient to constitute a public offense, in that it is not a necessary prerequisite in order to operate a ferry at the *locus in quo* that a license be procured from the board of county commissioners of Morton county. That in fact a license from the city of Bismarck to so operate a ferry at the place involved would be sufficient lawful authority to the relators. So it would appear to be if, in fact its concurrent jurisdiction had first been exercised. The complaint alleges that the relators did not have a license from the county commissioners of Morton county. The majority opinion has proceeded upon the assumption in quashing the writ herein that it is necessary for relators, in order to operate the ferry at the place involved, to procure and to

have a license or franchise from both the city of Bismarck and the county commissioners of Morton county. I am of the opinion that this view is erroneous. The granting of a franchise to operate a ferry is the exercise of the sovereign power of the state. 19 Cyc. 494; Patterson v. Wollmann, 5 N. D. 612, 33 L.R.A. 536, 67 N. W. 1040; Nixon v. Reid, 8 S. D. 507, 32 L.R.A. 315, 67 N. W. 57. Although this power is subject to the power of Congress, over navigable rivers the states have nevertheless exercised the power to establish and regulate ferries with no interference from Congress. Conway v. Taylor, 1 Black, 603, 17 L. ed. 191. It is not a power peculiar to a local community such as the town, village, city, or county. Well might the state directly exercise such power through one of the executive or administrative departments of the state government. 19 Cyc. 459; Bush v. Peru Bridge Co. 3 Ind. 21, 23. The local municipal corporation therefore when exercising this power acts as the agent of the state, and not for itself. Evans v. Hughes County, 3 S. D. 244, 52 N. W. 1062; Patterson v. Wollmann, 5 N. D. 608, 33 L.R.A. 536, 67 N. W. 1040. The franchise so granted may be made and is, by legislative act, exclusive. Patterson v. Wollmann, supra.

From this viewpoint it is wholly immaterial whether the franchise granted exists within or without the boundaries of the local community corporation to which has been granted the power of creating such franchising. It is well established that municipal corporations may be granted by the legislature sovereign powers that may extend in their execution even beyond and without their corporate boundaries.

In Patterson v. Wollman, supra, Judge Corliss has stated the view point as follows: "A ferry is a moving public highway upon water. The highway upon land meets at either shore with a physical obstruction in the shape of a stream of water. How shall this highway be carried over this stream? The solution of this problem is exclusively within the province of the sovereign power. In this country such power is exercised by the state legislatures. It rests with such bodies, subject to such constitutional restrictions as relate to the matter, to determine whether there shall be a bridge or an embankment of earth constructed or a ferry maintained to carry a highway over a stream. The ferry may be directly under public control or the sovereign power

may authorize a person or corporation to maintain this portable highway. When the power is delegated, the grantee of the franchise discharges a public duty in operating the ferry; and in the discharge of that duty he exercises a privilege which the state may grant or withhold at pleasure. The franchise does not consist of the right to sail his boat upon the stream, or to moor it by the shore. It is the privilege of operating a floating highway, of establishing and maintaining a public thoroughfare over water, and of charging tolls for the facilities for passage so afforded. Whatever right is enjoyed by the citizen in this regard is derived exclusively from the sovereign power, which has full control over the whole subject. The state may exclude all persons from the business. It may run all ferries itself."

In this regard the pertinent question involved is whether the legislature intended by said legislation to grant concurrent jurisdiction to a single municipal corporation to grant a franchise which when once exercised concerning a particular place exhausted the power, or whether it intended that two or more local municipalities should possess the power to grant a franchise covering only the ferry landing and the waters within the boundaries of its ordinary corporate jurisdiction. It is clear to me that the statutory provisions quoted cannot be harmonized and given effect so as to create an exclusive and full right to the franchise of a ferry excepting upon the construction which permits to a single municipal corporation the right to create a franchise by the first exercise of this concurrent jurisdiction.

Section 2063 plainly contemplates a granting of a franchise by a single board of county commissioners, or, when a ferry landing is located within the boundaries of a city, by the city itself in lieu of such board of county commissioners.

Section 2062 re-enacted, also contemplates a granting of such license by a single board. Section 2062 further contemplates the right to fix rates in the operation of such ferry by a single corporation. Section 2065 likewise contemplates action by a single authority, viz.: The secretary of state, in operating ferries in unorganized counties. For purposes of illustration it might be possible for a stream to exist wherein there are within the legislative limit, of 2 miles, four different landing places. Two within the limits of two different cities

or villages, and two other landing places within the limits of two other and different counties. Under the construction as cited by the majority opinion it would be necessary in such case for the relators to secure a franchise from each of the cities and from each of the county boards in order to maintain the ferry right and in such event all these local municipalities would possess the right to regulate the rates and would possess the right of canceling the franchise without regard to action by the other municipal bodies. I do not believe that the statute contemplates any such conflicting exercise of jurisdiction.

Under the terms of the statute, what is contemplated within the meaning of a ferry franchise? If such provision should be construed so as to create a legislative intent to grant to each board of county commissioners the control of the ferry privileges within its county, so that the franchise granted operated to convey a right to transport from a landing place within the county granting the franchise to the opposite bank, but not from the opposite bank to the place within such county, the construction as given by the majority opinion is probably correct. This idea is barely suggested in Patterson v. Wollmann, supra. It was so held in Power v. Athens, 99 N. Y. 592, 2 N. E. 609, where an act of the legislature granted in terms the right to a municipality to operate a ferry across the Hudson river from the west side of the river, and further held that it was within the legislative province to grant a franchise to ferry across the river in one direction only.

Under the statutory province involved herein, however, the franchise is exclusive. The intent of the act is clear to grant the full right of ferriage. The right to transport in one direction only is merely a portion of the right of the franchise. Ordinarily in the absence of the legislative restriction a ferry in the full sense of the word is a public highway and the franchise right thereover should include the right of transportation both ways. 19 Cyc. 493. In State ex rel. Driver v. Talladega, 3 Port. (Ala.) 412, it is stated: "The licensing and use of a ferry necessarily require the use of both banks of a river, and, if one is established on one side, it excludes the idea of legitimate establishment of another on the opposite side or within 2 miles by water on either side."

In Jones v. Johnson, 2 Ala. 746, where by legislative act the county

authorities were granted the right to create a franchise exclusive excepting when such ferry was situated at or near a town, it was held that when one of two counties had equal rights to establish a ferry the right was given to both, and that when the power was exercised by either it was exhauted; that such power was in the nature of concurrent jurisdiction, the proper exercise of which by one tribunal necessarily ousts all others. The court further held that where a river divided two counties the commissioners' court of either county might establish a ferry over the stream which divided them, and that, when so established in conformity to law, it was conclusive of the right of either county to establish another ferry within 2 miles thereof unless in the case of a ferry at or near a town. It was likewise held in State ex rel. Driver v. Talladega, supra. In a similar manner the fact that a franchise granted by a local municipality may extend upon land not subject to its jurisdiction does not militate against the validity or legality of such franchise. Vallejo Ferry Co. v. Solano Aquatic Club, 165 Cal. 255, 131 Pac. 864, Ann. Cas. 1914C, 1197; People v. Babcock, 11 Wend. 590; Patterson v. Wollmann, 5 N. D. 608, 33 L.R.A. 536, 67 N. W. 1040. Accordingly, I am of the opinion that the statutory provisions involved contemplate the granting of a franchise of ferriage to a single municipality with the right to exercise concurrent jurisdiction by either municipality when the stream is between two counties, the exercise of which jurisdiction by either municipality exhausts the power.

The writ should issue.