## J. D. PARIS *v.* LUIS VASCONCELLOS, THOMAS SILVA and MANUEL G. SILVA.

APPEAL FROM DISTRICT COURT, NORTH KONA, HAWAII.

SUBMITTED JANUARY 9, 1903.    DECIDED FEBRUARY 16, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A. leased to B. a whole ahupuaa situate in the District of North Kona and extending from the sea to at least the upper government road. There was some lantana on the demised premises ten years prior to the commencement of the term of the lease. *Held,* that evidence that the lessee had permitted the land to become overgrown with lantana, is not of itself a *prima facie* showing of a breach of the covenant not to suffer waste.

OPINION OF THE COURT BY PERRY, J.

This is an action for summary possession of land. The main allegations of the declaration are, that on July 23, 1891, Lahapa Halsey, a widow, executed a lease to the defendant Thomas Silva, for a term of twenty-four years from June 1, 1897, at a yearly rental of one hundred dollars of the land known as the Ahupuaa of Laaloa, situate in North Kona; that on August 24, 1891, Thomas Silva assigned to the Hawaiian Coffee & Tea Company, Limited, the lease as to a part of said premises, and that as to said part the said company assigned to the Kailua Coffee Company, Limited, on December 27, 1897, and the latter in turn assigned to the defendants Luis Vasconcellos and M. G. Silva by indenture dated September 28, 1900; that by deed from Lahapa Halsey, dated May 16, 1902, the plaintiff became the owner of the property; that the lease contained covenants by the lessee to pay the rent reserved annually in advance, without demand, in U. S. gold coin, and not to suffer any waste or any unlawful, improper or offensive use of the premises; that the defendants have failed to pay the rent and that on June 1, 1902, the sum of $100 of rent remained unpaid; that the defendants "have permitted and suffered waste of the said premises, in that they have allowed the same to become overgrown with lantana and weeds, contrary to the covenant aforesaid, and that said premises are now so overgrown"; and that on August 11, 1902, the plaintiff made entry and determined the estate created by the lease, served notice of such determination on the defendants and made demand for possession.

At the trial in the District Court, J. Greig, a licensed attorney, appeared for defendants Vasconcellos and M. G. Silva, and filed a demurrer, signed "M. G. Silva, by John Greig, his attorney". This demurrer was overruled. The same defendant then filed an answer which is not with the record sent up to this Court, but in which, as shown by the Magistrate's minutes, he admitted the non-payment of the rent and denied the truth of the allegations as to waste; and also tendered into court the amount of the rent due, costs and interest, all of which was re-

fused by the plaintiff. No written answer was filed by the other defendants and upon motion of plaintiff based on the ground that they had "made no plea or answer", "judgment by default" was "entered" against them. The case then proceeded "on its merits as against M. G. Silva" and at the conclusion of the trial judgment was rendered for the plaintiff. From the judgment the defendants Luis Vasconcellos and M. G. Silva appeal to this Court on points of law.

The first question raised by the appeal is whether or not the Magistrate erred in entering judgment by default, and without any hearing, against the defendant L. Vasconcellos. In our opinion, he did. While the statute concerning summary possession, C. L., § 1683, provides that "if the defendant shall be defaulted" the plaintiff "shall have judgment for the possession" of the premises, it does not define what shall be deemed a default, but on the contrary says that "the suit shall be conducted like other civil actions before such Magistrate", meaning the District Magistrate. This immediately follows the provision concerning the time within which summons shall be made returnable. The requirements of the declaration are specifically set forth, but nothing is said as to any pleading by the defendant. In other civil actions, generally, before Magistrates, no written demurrer, plea or answer is required either by statute or by established practice. On the contrary, proceedings in those courts have always been somewhat informal and defendants may put in any legitimate defense without written pleadings. In the case at bar Vasconcellos, as well as M. G. Silva, appeared by counsel and cannot be held to have been in default. Thomas Silva's default, if such there was, cannot, of course, injuriously affect the other defendants.

Was the evidence adduced sufficient to support the judgment? The breach of the covenant to pay rent was cured by the tender made in court. Even if the tender had not been made until after judgment, the writ of possession could not be legally issued. "The issuing of such warrant of removal shall not be stayed in the case of a proceeding for the non-payment of rent, if the

person owing such rent, shall, before such warrant be actually issued, pay the rent due, and all the costs and charges of the proceedings". C. L., § 1686.

No breach was shown of the covenant not to suffer "any unlawful, improper or offensive use" of the premises. The only breach claimed is that the lessees permitted the land to become overgrown with lantana, but this, if true, would not be a breach of that covenant. It is not a *use* of the land, within the meaning of that word as employed in the lease, to permit it to become overgrown with a noxious plant. Neither the lessees nor any one else caused or encouraged the lantana to grow as a means of deriving benefit from the land or for any other purpose; it came there and grew against the will of all concerned.

The main question, under this branch of the case, is whether or not a breach of the covenant not to "suffer any waste" was shown. The plaintiff's contention is that the defendants violated this covenant by permitting the land to become overgrown with lantana. The testimony given on the subject by plaintiff's witnesses is as follows: By J. D. Paris, plaintiff: "The land is almost entirely useless by being overgrown with lantana. The whole land from the sea to the upper government road is almost impassable. The coffee is damaged by the lantana. The growth of lantana is detrimental; it would take $3,000 or $4,000 to put the land in shape again. * * * A few years ago, there was very little lantana. * * * Saw the land about fifteen years ago, very little lantana on the land." By J. K. Nahale: "The lower portion is entirely covered by lantana, the upper portion has also lantana. Lantana is very injurious to land; several thousand dollars would have to be expended to put the land in shape. Ten years ago when Thomas Silva had the land there was not much lantana." By Thomas Silva: "I was the lessee. Sold the lease, still live on land. Reserved about two acres as a house. * * * When I got the land, there was not much lantana, then it was good pasture land, now it is not good pasture on account of lantana. Lantana is very bad for land. I tried to keep it clean, on account of my lease and also to get pasture.

38—D

\* \* \* The lower portion of the land is entirely covered by lantana, some lantana above the road. The road through the coffee is almost covered with lantana. When I first got the land, some lantana was on the land. \* \* \* If lantana overgrows, the land is good for nothing. If the lantana was cleared the land would be still good."

Waste has been defined to be, "the doing or suffering that to be done upon the premises which essentially injures or impairs the inheritance of the estate occupied by the tenant."—1 Wash., R. P., p. 129. "Any permanent or lasting injury done or permitted to be done, by the holder of the particular estate, to the inheritance or to the prejudice of any one who has an interest in the inheritance."—28 Am. & Eng. Encycl. Law 862. "An injury done or suffered by the owner of the present estate which tends to destroy or lessen the value of the inheritance."—Cooley, Torts, pp. 332, 333. "A spoil or destruction in houses, lands or tenements, to the damage of him who is in reversion or remainder. \* \* \* It is a general principle \* \* \* that the law considers everything to be waste which does a permanent injury to the inheritance."—1 Taylor, Landlord & Tenant, pp. 403, 404. Whatever the definition given by each, all the authorities seem to agree that the law of waste accommodates itself to the varying wants, conditions and usages of different countries, and that there is no absolute rule as to what shall constitute waste under all circumstances; and it is for this reason that but little aid is to be derived from decided cases showing what particular acts and omissions have been held to be or not to be waste. Another principle, equally well settled and of at least as great importance is, that in the construction of written agreements it is the intention of the parties as therein expressed that is to be sought and, when ascertained, given effect to.

Lantana is a thorny bush of rapid growth, able to withstand successfully long periods of drouth. It bears a large quantity of seeds and these are freely scattered by birds, wind and water, all agencies beyond the control of man. Once it has entered a section of the country, it spreads rapidly, and finally, if left to itself, forms a dense, tangled mass. By reason chiefly of the ex-

treme ease with which the seeds are scattered, it is a costly under-taking to clear and keep clear a large tract of land, especially if it is rocky or hilly. These are matters of common knowledge. There are doubtless ahupuaas, rocky in large part, of sloping ground and where conditions otherwise favor the rapid spread of lantana, which it would be impossible, after the lantana has gained a foothold, to clear wholly or to any great extent and yet leave a margin of profit from the income of the property. In the case of a lease of such an ahupuaa, containing the general covenant only as to waste and no express provision concerning lantana, it could not properly be held to have been within the contemplation of the parties in entering into the contract that the lessee was thereby undertaking to clear the land. To hold otherwise would be to give an unreasonable construction to the contract and to place upon the lessees of such lands a burden not expected of them by the lessors at the time the contracts were entered into and not then intended to be assumed by the lessees, and which would render the estate for years practically valueless to the lessees, depriving the latter of financial benefits which, reasonably, they must have expected. We think the reasonable rule is that if landlords, under such circumstances, desire to have their lands cleared, they should say so to prospec-tive tenants and have a specific covenant on the subject inserted in the lease if one is accepted and entered into.

Whether injury will result to the inheritance is not always the sole test of waste. What men of ordinary prudence and diligence do under the same circumstances is also material to be considered in cases similar to that at bar. See Cooley, Torts, pp. 334, 335; 1 Wash. R. P., §288; Tiedmann, R. P., §77; and *Clemence v. Steere*, 1 R. I. 272, 274, 275.

The ahupuaa of Laaloa, it appears from the lease, is situate in the District of North Kona, Hawaii, and extends, as shown by the plaintiff's testimony, from the sea to some point mauka of the upper government road. The plaintiff's own testimony, uncontradicted, further shows that in 1887 there was some lan-tana on the land, in other words, that it had been growing there for ten years prior to the commencement of the term of the de-

fendants' lease, that at the time of the trial, when only five years of the term had expired, large portions of the land were thickly covered and that the cost of clearing at that time would have been from $3000 to $4000. No evidence, however, was adduced, tending to show that men of ordinary prudence and diligence would, under the circumstances, have cleared the land. The burden of proving this, was, in our opinion, upon the plaintiff. The evidence adduced shows at best an injury to the inheritance and nothing more, and the Magistrate decided the case practically as if such injury was the only test involved. In this we think that there was error. The evidence is insufficient to support the judgment and the latter must be set aside.

We are not prepared to say on the meager evidence before us that no showing could be made in this particular case, which would support a finding of waste; and since a new trial is rarely, if ever, ordered by this Court on an appeal of this kind, we think that the case should be dismissed without prejudice. Judgment set aside and case so dismissed.

*Kinney, Ballou & McClanahan* and *S. H. Derby* for plaintiff.

*Smith & Lewis* and *Thayer & Hemenway* for defendants-appellant.

