J. V. MACIEL *v.* JOHN TELLES.

No. 1803.

SUBMITTED MARCH 28, 1928.                    DECIDED MAY 7, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This case is before us upon defendant's appeal on points of law from the judgment of the district magistrate of Wailuku in favor of the plaintiff in an action of assumpsit for rent in the sum of $100 alleged to be due under a certain indenture of lease, a copy of which is attached, as Exhibit "A," to plaintiff's complaint. The lease, later introduced in evidence as plaintiff's Exhibit "A," was executed under date of July 6, 1921, by plaintiff, as lessor, to defendant, as lessee, demising the land therein described for a term of six years from and after the 1st day of July, 1921, at a stipulated yearly rental of $190, payable semiannually in advance. The instrument contains the following covenant of quiet enjoyment: "The said lessee, his heirs or assigns, yielding and paying unto the said lessor, his heirs or assigns, the rent at the times and in the manner aforesaid and keeping and performing all of the covenants herein contained on his part to be kept and performed, shall and may peaceably and quietly enjoy and possess the demised premises for the full term hereof." The complaint alleged in paragraph one plaintiff's ownership of the land described in said lease; in paragraph two the relationship of landlord and tenant between plaintiff and defendant and the possession and occupation of said prem-

ises by the defendant by virtue of said lease until the expiration thereof; in paragraph three defendant's covenant to pay rent as above set forth; in paragraph four "that said defendant, contrary to the provisions in said lease contained, failed, neglected and refused to pay the rental of $95 due on January 1, 1927. That there was also due and owing plaintiff from defendant a balance of $5 on account of rental to July 1, 1926. That there is now due and owing plaintiff from defendant the sum of $100 for rentals on the premises herein described." Judgment was asked in the sum of $100 with interest, costs and attorney's commissions.

At the time set for the hearing of said action, after plaintiff's counsel had announced that he was ready for trial, defendant's counsel in open court made orally the following answer: "The defendant admits the first paragraph of plaintiff's complaint and all that part of the second paragraph thereof, except the following words: 'Until the expiration of said lease' and in lieu thereof states 'until the lessee was ousted by the lessor.' The defendant admits the third paragraph of plaintiff's complaint and denies the fourth paragraph thereof; and alleges as defence thereto that the lessee was ousted by the lessor prior to the expiration of the lease or term thereof, and as defence states that the said lessee his heirs or assigns allowing and paying unto the said lessor his heirs or assigns, rent at the times and in the manner aforesaid, and keeping and performing of the covenants herein contained, on his part to be kept and performed, did not peacefully and quietly enjoy and possess the demised premises for the full term thereof, by reason of the fact that the lessor illegally ousted the said lessee from the possession thereof on or about the month of April 1927, and as a plea of recoupment the defendant, John Telles, alleges as follows: to-wit: That the

said plaintiff, J. V. Maciel, is indebted to the said defendant, John Telles, in the sum of $200.00 in that the said J. V. Maciel during the month of April 1927, caused to be destroyed sweet potatoes and corn of the aggregate value of about $100.00 and in contravention of the term of said lease did cause the said John Telles, defendant, the lessee named in said lease, to be illegally ousted from the demised premises before the expiration of said lease, to-wit: during the month of April 1927, and denied the said defendant the peaceful and quiet enjoyment and possession of said demised premises, to the damage of said defendant in the sum of $200.00." The magistrate deferred ruling upon the motion at the time it was made and proceeded to the trial of the case.

The plaintiff introduced the lease above referred to and proved its execution. The lease appears to have been unrecorded. Testimony was also adduced to the following effect, namely, in July, 1921, the boundaries of the leased lands were pointed out on the ground by the lessor to the lessee who upon the execution of the lease took possession of the demised premises and remained in possession of the same until the expiration of the lease, about six years thereafter. The rental was thereafter paid in installments of $95 each semiannually in advance until July, 1926, when the lessee for the first time failed to make his payment. In January, 1927, the lessee, who then owed $95 for the last half of 1926 and $95 for the first half of 1927, in all $190, paid $90 on account leaving $100 still due and unpaid, no part of which has been paid. In April or May, 1927, less than three months prior to the expiration of said tenancy plaintiff sold and conveyed by deed to one George Tanaka, a neighbor, the fee of the premises described in said lease. Plaintiff testified that he said to Tanaka, when the latter bought the land, "You don't go

on that land without John's permission because he has a lease until the last day of June." Plaintiff also testified that a few days after the sale of said land to Tanaka he notified the lessee, John Telles, of said sale. In May, 1927, plaintiff, according to his testimony, called at Telles' house and was told by Telles that the latter would pay during the month of June. In July, the rent not having been paid in the meantime, plaintiff again called upon the defendant and was told by the latter to wait until August when he would pay.

The plaintiff having rested the defendant moved for a nonsuit on the ground that the plaintiff had failed to make out a *prima facie* case, which motion was overruled by the magistrate. The defendant then took the stand and testified that at the beginning of April, 1927, while the demised premises were being plowed preparatory to being planted to potatoes, corn and beans, Tanaka came upon the land, told lessee that he had bought the same and further told him that whatever he had upon the land he could take but "not to cultivate any more." Defendant's testimony is to the effect that the crops intended to be planted, as above set forth, could not possibly mature before the expiration of defendant's lease. On redirect examination defendant said that he intended to plant his crops in April with the expectation that he would get an extension of the lease. Defendant further said that Tanaka and the surveyor then went about putting in pins and trampling upon the potatoes and when the defendant protested, that Tanaka said that he "had orders from the boss, Maciel." The testimony does not show, except inferentially, whether the foregoing events occurred before or after the sale of the premises and the execution of the deed to Tanaka or whether at the times named Tanaka was a mere

trespasser, the agent of the owner, or himself the owner in reversion of said premises.

In April, according to defendant's testimony, Tanaka started to make a road on said premises and about one month before the expiration of said lease he erected two buildings. In one part of his direct examination defendant said that the buildings were erected "where the sweet potatoes grew," in others that Tanaka built "in an empty lot," "up above" upon land that was not plowed. Defendant has stated his damages in varying amounts. On direct examination he was asked, "Q What was the value of the sweet potatoes? A About $100.00. Q That was the damage to the sweet potatoes, about $100? A Yes." Again, "Q If you were allowed to occupy the premises until the expiration of the lease by planting on the land, how much could you have realized on that land up to the expiration of the lease? A If I kept on I would get about $500.00. Q If you planted potatoes on the land and had not been interrupted could you have realized $100.00? A About $100.00 more or less. Q If you had not been interrupted in planting that land would you have raised a crop of $100.00 or more, on that land? A I could not say how much but at least about $300.00. Q Could you have raised if you had planted at the time you were stopped —could you have made at least $100.00? A Easy about $100.00. Q By reason of the ouster prevented your planting and you lost money? A Yes." Again, "Q By reason of that ouster you have suffered in damages at least $200.00? A Yes." In May defendant says he left the premises because Tanaka told him "not to cultivate the land any more," but returned after about one month's absence to complete the removal of his crops. Defendant has given various reasons for not paying the last installment of his rent. On direct examination he

was asked, "Did you ever promise J. V. Maciel that you would pay $100.00 balance on that lease?" and replied, "I did not promise to give him $100.00 because I was losing the lease." On cross-examination he was asked, "Why didn't you pay the lease when it was due in January 1927?" and answered, "Because he broke the lease."

After plaintiff and defendant had both rested the magistrate granted plaintiff's motion, made at the beginning of the trial and hereinafter referred to, to strike "all of defendant's answer pertaining to recoupment" and thereafter rendered judgment in favor of the plaintiff and against the defendant in the sum of $100 with interest, costs and attorney's commissions. One of the points of law upon which the appeal is taken is thus in part set forth in the notice and certificate of appeal: "(12) That the district magistrate committed reversible error in striking from the record, on motion of plaintiff, defendant's plea of recoupment on the ground that no cause of action or pleading has been filed in this case setting forth facts on which to base a cause of action * * * ."

It is not clear from the record whether the motion to strike hereinabove referred to merely sought to test the legal sufficiency of the affirmative allegations of defendant's answer or whether it was based upon the assumption that the "plea of recoupment" in order to be entitled to consideration was required to be in writing. The briefs touch very lightly upon the question as to whether or not defendant's answer contains averments sufficient to constitute a defense by way of recoupment; they present more definitely the question as to the effect of its oral form; but each places principal emphasis upon the question which it assumes to be presented, namely, as to the legal sufficiency or insufficiency, for the purpose offered, of defendant's evidence.

The motion to strike was made before any evidence had been offered and was based upon grounds which required for decision only an examination of the answer itself and the form in which it was presented. While it is true that the decision was postponed until after submission of the case, and while it is likewise true that the magistrate gave no reason for his ruling, it is reasonable to assume that the motion was granted solely upon the ground therein urged and without any consideration by the magistrate of defendant's evidence.

Two questions, at least inferentially, are thus presented by the portion of plaintiff's point of law numbered twelve above quoted. (1) Was a written answer required in the premises? and (2) if a written answer was not required, did the answer moved against set forth a legal defense by way of recoupment?

(1) The first question has already been answered definitely and authoritatively in the negative by former opinions of this court. In *Paris* v. *Vasconcellos,* 14 Haw. 590, 592, an appeal on points of law from the judgment of a district magistrate in an action for summary possession of land, it was said: "In other civil actions generally before magistrates no written demurrer, plea or answer is required either by statute or by established practice. On the contrary, proceedings in those courts have always been somewhat informal and defendants may put in any legitimate defense without written pleadings." *Paris* v. *Vasconcellos* is cited with approval in the *per curiam* opinion in the later case of *Wong Young* v. *Kum Chong,* 24 Haw. 95, which also cites with approval *Larrisch* v. *Schaefer,* 6 Haw. 140, to the effect that the complaint may be oral, and *Holt* v. *Peacock,* 18 Haw. 502, and *Associated Repair Works* v. *Rogers,* 22 Haw. 91, 94, to the effect that strict rules of pleading do not apply to procedure in district courts. In the

442

case at bar the magistrate was not justified in striking any part of defendant's answer on the ground that the same was not in writing.

(2) The question as to whether or not defects in substance, if any, in the answer may be taken advantage of by a motion to strike instead of a demurrer has not been presented. The practice of filing such a motion, like the practice of filing a motion to dismiss the complaint for not stating a cause of action, has not become established here (see *Wilcox* v. *Berrey,* 16 Haw. 37, 40). Nevertheless, because of the relaxation of strict rules of procedure in district courts, but without establishing any precedent so far as circuit court practice is concerned, the motion in the present instance will be considered as properly raising the objections it sets forth as to the legal sufficiency of the portion of defendant's answer which it asks to have stricken. Question number two then presents itself: Did the answer moved against set forth a legal defense by way of recoupment? Plaintiff's action as above set forth is for rent alleged to be due under a certain indenture of lease. The same lease contains a covenant for quiet enjoyment. Defendant alleges performance of his own covenants and in part, by way of recoupment, that at a time named, before the expiration of said lease, the plaintiff destroyed certain named crops of a specific value and in contravention of the terms of said lease illegally ousted the defendant from the possession of said demised premises and denied defendant the peaceful and quiet possession of the same to the defendant's damage in a sum named.

Whether or not recoupment *need* be specially pleaded may still be left undetermined. "It seems that it *may* be so pleaded." Puterbaugh, Common Law Pl. & Pr., 10 ed., 293, citing *Luther* v. *Mathis,* 211 Ill. App. 596. See also 19 Ency. Pl. & Pr. 743, 744, and 31

Cyc. 698. And the practice has received recognition in this Territory. *Erickson* v. *Volcano Stables & Transportation Co.,* 13 Haw. 428, 431. This being true, it becomes necessary only to determine whether or not the foregoing allegations contain the essentials to a defense by way of recoupment. We believe that they do. "The later cases in this country are practically in unison in holding that in an action for rent the defendant may, even apart from statute, recoup the damages caused by the plaintiff's breach of any covenant of the lease." 2 Tiffany, L. & T., 1842, citing *City of New York* v. *Mabie,* 13 N. Y. 151, also reported in 64 Am. Dec. 538. In an action upon a covenant to pay rent recoupment, therefore, may be claimed upon the plaintiff's covenant for quiet enjoyment contained in the same instrument.

The rent sued for in the instant case had already accrued. Therefore a subsequent eviction could not defeat in toto an action for its recovery. But this fact would not defeat the claim of a deduction for so much of the term as elapsed after the eviction and for the damages sustained thereby by the defendant (*Leary* v. *Meier,* 78 Ind. 393, 396), within the limitation of the amount sued for by the plaintiff.

Defendant's point of law numbered one is that error was committed by the district magistrate in sustaining an objection to a question asked a witness upon cross-examination. The point is not available in an appeal of this kind. "Our view is that as no 'exceptions' as such are allowable from a district court, the 'points of law' to be appealable must be such rulings of law as are vital to the case and involved in arriving at the final judgment, and not errors in admitting or refusing to admit evidence during the progress of a trial." *Provisional Government* v. *Aloiau,* 9 Haw. 399, 401. Point numbered thirteen is to the entry of the judgment in

favor of the plaintiff. Points of law numbered two to eleven inclusive all require an examination of the transcript and a ruling as to the sufficiency of the evidence.

In our view as to the sufficiency in substance of the allegations of defendant's answer, as to the error of the district magistrate in striking a part of that answer and as to the procedure to be followed in consequence thereof, we deem it unnecessary at this time to pass upon any questions as to the sufficiency or insufficiency of defendant's meager proof. In this view it is unnecessary now, in advance of a possible new trial, to determine *inter alia* (a) whether or not the evidence as to the construction of the road and the erection of two buildings upon the demised premises set forth enough details and showed sufficient interference with defendant's possession to constitute an eviction under the opinion of this court in *Holt* v. *Waialua Agr. Co.,* 18 Haw. 360; (b) whether the proof generally showed an eviction, and if so, whether such eviction was in whole or in part; (c) whether it showed such an eviction by the plaintiff, his agent or his successor in title, or whether it showed merely a trespass by a third party; (d) whether or not it showed a waiver of rights on the part of the defendant, and (e) in what amount, if any, defendant has been shown to have been damaged in the premises.

Point numbered twelve is sustained upon the grounds hereinabove set forth.

Following the practice adopted in *Lea Bow* v. *Young Yung,* 11 Haw. 772, 774, the judgment appealed from is reversed and the case is remitted to the district court for a new trial.

*E. Vincent* for plaintiff.

*Heen & Godbold* for defendant.